MEDICAL DIAGNOSTIC ASSOCIATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96563.   Promulgated August 27, 1940.

*J. Marion Wright, Esq.*, and *Wm. C. Kottemann, C. P. A.*, for the petitioner.
*E. A. Tonjes, Esq.*, for the respondent.
*C. Arden Gingery, Esq.*, as *amicus curiae.*

614

OPINION.

SMITH: The petitioner claims to be exempt from income tax under section 101 of the Revenue Act of 1936. It is unable to point to any class of exempt corporations which expressly comprehends it. At the hearing of this proceeding counsel for the petitioner was asked:

What provisions of Section 101 of the Revenue Act of 1936 are you particularly relying upon in your claim that the Association here is exempt from filing any income tax returns?

He replied:

* * * the Medical Diagnostic Association does not come under the provisions of any specific class of organizations specifically exempt and yet, it savors of tests that are made for all of the associations. It has some of the characteristics of a scientific educational organization. It is similar to a business league in that it is an association of doctors. It is somewhat similar to what we might say, to a board of trade, although confined to professional men. It is—in a way, it has a scientific purpose and is sort of a civic league. * * *

Section 101 of the Revenue Act of 1936 provides in part as follows:

SEC. 101. EXEMPTIONS FROM TAX ON CORPORATIONS.

The following organizations shall be exempt from taxation under this title—

* * * * * * *

(6) Corporations, * * * organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * *, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation.

It is not material that the petitioner is organized as a nonprofit corporation under the laws of the State of California; that it aims to perform its services for its members at cost; or that it can not and never has declared any dividends to its members. In this connection it may be noted that the Civil Code of the State of California provides for nonprofit corporations and states in section 593 thereof the formation and purposes for which a nonprofit corporation may be formed. It provides:

Formation and purposes.—A nonprofit corporation may be formed by any number of persons, not less than three, for any lawful purposes, such as religious, charitable, social, educational, recreational, cemetery or for rendering services which do not contemplate the distribution of gains, profits or dividends to the members thereof, and for which individuals lawfully may associate themselves, subject to laws and regulations applicable to particular classes of nonprofit corporations or lines of activity. The carrying on of business at a profit incidental to the main purposes of the corporation and the distribution of assets to members on dissolution shall not be deemed forbidden to nonprofit corporations.

It can not be denied upon the evidence in this case that it was the thought and expectation of the three incorporators that laboratory

services could be performed for members of the petitioner corporation at prices less than those charged by the commercial laboratories. This was undoubtedly one of the objects in the organization of the petitioner. It enabled the physicians and surgeons and dentists who were members of the association to obtain laboratory services at such a price as would enable them to serve patients of the lower income groups at prices less than they would have to charge if the laboratory services were paid for at higher prices. If the physicians and surgeons were disposed to reduce their charges to such low income groups, they could do so. By reason of this fact, counsel for the petitioner states that the organization of the petitioner was for a semialtruistic or semicharitable purpose. It is to be noted, however, that charitable corporations are not exempt from income tax under section 101 (6) of the Revenue Act of 1936 except where "organized and operated exclusively for * * * charitable" purposes. Even if it might be assumed that the petitioner is semicharitable, it is not within the class of exempt charitable organizations; it is not "exclusively" charitable.

The petitioner was also authorized to perform laboratory services for others than members, and the evidence shows that some such services were rendered. Charges for such services were made at commercial rates. Profits from such services inured to the benefit of all the members. It can not therefore be said that no part of the earnings inured to the benefit of the members.

The claim of the petitioner that it is exempt as a "business league" does not stand upon a better foundation than its claim for exemption as a charitable corporation. In article 518 of Regulations 62, 65, and 69 a business league is defined as "an association of persons having some common business interest, which limits its activities to work for such common interest and does not engage in a regular business of a kind ordinarily carried on for profit."

In applying a provision of the Revenue Act of 1928 to a corporation which claimed to be exempt from income tax as a chamber of commerce this Board, in *Produce Exchange Stock Clearing Association, Inc.*, 27 B. T. A. 1214; aff'd. (C. C. A., 2d Cir.), 71 Fed. (2d) 142, held that under the doctrine *noscitur a sociis* a business league must have the general characteristics of a chamber of commerce, real estate board, or board of trade in order to be exempt from tax. In affirming the Board's decision the United States Circuit Court of Appeals said:

Were the construction of the statutory provision in question a matter *res integra*, we should find little difficulty in holding that a corporation formed for the purpose of affording clearing house facilities to a limited group of traders in securities was not a "business league" entitled to exemption from taxation. The numerous subdivisions of section 103 of the Revenue Act of 1928 (26 USCA § 2103) and the corresponding provisions in the earlier acts, specify organizations which, in the great majority of instances, are evidently granted exemption because of

the benefit to be derived by the public from their activities. Cf. *Trinidad* v. *Sagrada Orden*, 263 U. S. 578, 581, 44 S. Ct. 204, 68 L. Ed. 458. There is reason why these should be favored, but none is apparent for exempting an association which merely serves each member as a convenience or economy in his business. This is the distinction which the Board of Tax Appeals and the courts have taken in applying the provision in question to somewhat analogous situations. *Uniform Printing & Supply Co.* v. *Commissioner*, 33 F. (2d) 445 (C. C. A. 7), affirming 9 B. T. A. 251; *Crooks* v. *Kansas City Hay Dealers' Ass'n*, 37 F. (2d) 83 (C. C. A. 8); *Northwestern Jobbers Credit Bureau* v. *Commissioner*, 37 F. (2d) 880 (C. C. A. 8), affirming 14 B. T. A. 362; *Louisville Credit Men's Adjustment Bureau* v. *United States*, 6 F. Supp. 196 (D. C. W. D. Ky.); *A–1 Cleaners & Dyers Co.* v. *Commissioner*, 14 B. T. A. 1314; *Growers Cold Storage Co.* v. *Commissioner*, 17 B. T. A. 1279.

A well founded claim for an exemption from income tax under any of the classes of corporations exempt under section 101 of the Revenue Act of 1936 must be predicated upon evidence which shows that the corporation falls fairly within the exempt class. The evidence in this case does not show that fact.

The petitioner corporation was promoted by the Dieterles, only one of whom, Karl L. Dieterle, was apparently a physician. The father was not a physician and there was no requirement that the incorporators or directors should be physicians. Karl L. Dieterle testified that his father was the clerical or business executive officer of the corporation. So far as appears their salaries were fixed by themselves. The income tax returns show that father and son each received a salary from the petitioner for 1936 of $5,400, and for 1937 of $6,600. The question of the reasonableness of these salaries paid is not before us. But we think it clear that the corporation was organized in the manner in which it was organized for the purpose of obtaining business in volume for the laboratory by the Dieterles.

The determination of the respondent that the petitioner is not exempt from income tax is approved.

Much evidence was introduced with respect to the correct net addition to the bad debt reserve for each of the years 1936 and 1937. It appears that there were some old accounts on the books of the petitioner corporation that were properly known to be worthless prior to 1936. They had not been charged off, however, and no reserve had been set up against them. The addition to the reserve made by the petitioner for 1936 was $1,079.15, and for 1937 was $1,349.73. From a careful consideration of the evidence the Board is of the opinion that the net addition to the reserve should be one percent of the volume of business for each year and that the correct net addition to the bad debt reserve for 1936 is $860.84 and for 1937 is $1,016.29.

*Decision will be entered under Rule 50.*