### SALYER et al. v. JACKSON.

No. 15040—Opinion Filed Dec. 30, 1924.

1. Dedication — Public Lands — Reserved Highways—Acceptance—Abandonment.

The reservation of land two rods in width on each side of all section lines for highway purposes, expressed in the Act of Congress of May 2, 1890 (U. S. Comp. Stat.

1918, sec. 5024), and in section 23 of the Organic Act, when accepted by the territory of Oklahoma by the Act of December 18, 1890 (Wilson's Rev. & Anni. Stat., sec. 6072), and by the state by section 2, art. 16, Const., carried with it the implied condition that such reserved lands should be suitable and practicable for road purposes, and where any section line in the state embraced by the terms of such reservation and acceptance is physically impassable and not practicable for road purposes, abandonment will be presumed after the lapse of a reasonable time, in the absence of some action by the proper authorities evincing an intention to open such line for public use.

## 2. Same—Reverter to Fee Owner.

Abandonment has the same effect as formal vacation, and where the intention to abandon a reserved section line is evidenced by its physical unsuitability for road purposes and by failure of the proper authorities to open the same to public use within a reasonable length of time, an intention to abandon is established so as to cause a reverter of the reserved portions to the abutting fee owners under section 5024, supra.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Caddo County; Will Linn, Judge.

Action by Luke Jackson against Charles Salyer and C. C. Foust, Road Supervisors of Sickles Township, Caddo County, for an injunction. Decree for plaintiff perpetuating the temporary injunction, and defendants bring error. Affirmed.

This action was commenced in the district court of Caddo county by plaintiff filing his petition March 21, 1922, wherein it was charged, in substance, that defendants were threatening and were about to take down and destroy the plaintiff's fence located on a certain section line therein described and that they were about to take forcible and unlawful possession of certain lands of the plaintiff for the purpose of converting same into a public highway. Plaintiff prayed for a temporary injunction and upon final hearing that the same be made permanent. Thereafter plaintiff filed an amended petition which was in substance the same as the original, and after demurrer was overruled thereto, defendants answered.

The answer consisted of a general denial, an admission of plaintiff's ownership of the land involved, and affirmatively alleged that the land in controversy was reserved as a public highway by the laws of the United States and of the state of Oklahoma, and that said defendants, as road supervisors, were exercising their rights and performing their duties as public officers in attempting to open said section line for a public highway, and further alleged that the failure of the officials of Caddo county to open said section line before this time "was due to an impassable canyon between the southwest corner and the northwest corner of said section 6."

Upon the issues thus made the cause was tried to the court September 4, 1923, resulting in a decree in favor of the plaintiff perpetuating the temporary injunction. After unsuccessful motion for new trial, defendants have brought the case here by petition in error with case-made attached for review. The parties will be hereafter referred to as plaintiff and defendants, as they appeared in the trial court.

Sam L. Wilhite and Theodore Pruett, for plaintiffs in error.

A. J. Morris, for defendant in error.

Opinion by LOGSDON, C. Only one proposition is presented for reversal of this case in defendants' brief. It is urged that the judgment is not sustained by the evidence and is contrary to law.

The situation presented by the record may be fairly stated thus: Plaintiff entered the S. W. ¼ of sec. 6, T. 10 N., R. 11 W., in Caddo county, as a homestead in September, 1901. Thereafter he received a patent in 1909. The west section line of section 6, to within a little more than a quarter of a mile of the southwest corner, has ever since its settlement been impassable by reason of a deep gulch or wash extending north and south along and adjacent to said section line. Therefore it was never considered feasible as a highway and was never opened. The section line on the south has been open and used as a highway ever since the settlement. About three years prior to the commencement of this action a washout occurred where another gulch intersects this south line at or near the southeast corner of this southwest quarter. As a result the county commissioners condemned a right of way across this quarter section, which right of way extended beyond the west line of section 6 and re-entered the south section line in the S. E. ¼ of sec. 1, T. 10 N., R. 12 W. Shortly before the commencement of this action one of the county commissioners decided to abandon that portion of the new right of way lying west of the west line of section 6, title to that portion of the new road never having been acquired, and to use about a quarter of a mile of this west section line to connect the new highway with the south section line. For this purpose plaintiff's fence was torn down

on the west line from the southwest corner of the section north to where the new right of way intersected this west line. Plaintiff had occupied and cultivated the 33 feet in controversy east of and along this section line ever since his settlement on the land in 1902.

Defendants rely on the provisions of U. S. Comp. Stat. 1918, sec. 5024, the identical provisions contained in section 23 of the Organic Act, and on section 2, art. 16, Const. Section 5024 reads:

"That there shall be reserved public highways four rods wide between each section of land in said territory, the section lines being the center of said highways; but no deduction shall be made, where cash payments are provided for, in the amount to be paid for each quarter section of land by reason of such reservation. But if the said highway shall be vacated by any competent authority, the title to the respective strips shall inure to the then owner of the tract of which it formed a part by the original survey." (May 2, 1890, c. 182, 23, 26 Stat. 92.)

Two contentions are made by defendants under this section: First, that there was no vacation or abandonment of this section line as a highway; second, that plaintiff cannot acquire title thereto as against the state by adverse possession. Unless the first of these contentions can be sustained the second is not material.

The obvious purpose and object of this section are to obviate the procedure, delay, and expense incident to acquiring right of way by condemnation. The fee is not divested, and the beneficial use reverts to the abutting owner upon decision by the proper authorities not to exercise the right of public user authorized. It is settled by decisions of this court that the reservation contained in section 5024, supra, was accepted by the terms of the territorial general statute of December 18, 1890 (Wilson's Rev. & Ann. Stat., sec. 6072), and by section 2, art. 16 of the Oklahoma Constitution.

Was there a vacation or abandonment of this west section line for highway purposes?

It is not contended by plaintiff that there was a vacation in the sense of affirmative record action by the board of county commissioners, but that by reason of the impassable condition of this section line both north and south of his land, and the impossibility of rendering its use as a highway feasible by the expenditure of money and labor, there was an abandonment of the same.

No claim is made by defendants that it is the intention of the board of commissioners, even at this late day, to open this section line as a public highway to the north and south of the quarter-mile strip claimed by them. The facts shown by the record furnish an almost conclusive inference that no such intention exists.

While the language of section 5024, supra, is not, strictly speaking, a dedication, but rather a reservation with reverter of the vacated portions of the reservation to the abutting fee owners, it is considered that the rules of law applicable to abandonment of dedicated property are applicable in the instant case.

In 18 C. J., p. 125, sec. 162, it is said:

"In a sense dedicated property may be abandoned before acceptance or, speaking more accurately, the right to accept may be lost by nonuser, or by nonuser in connection with other circumstances indicating an intent not to appropriate the dedicated property to the use for which it was dedicated."

It is in evidence in this case without contradiction that the section line in question has never been opened or used as a highway; that it is impracticable for such use, and it was so alleged to be in the answer of defendants; that it has been continuously fenced and that the land on each side has been continuously cultivated up to the line. Since the line has never been opened for public use, there was no actual highway to be vacated by formal order of the county commissioners. The reservation in section 5024, supra, considered in connection with Const., art. 16, sec. 2, and the provisions of Comp. Stat. 1921, sec. 9988, does not contemplate the performance of a futile and ineffectual act by the authorities of the state or any of its subdivisions, and where no highway has been actually established on a section line because of insuperable natural barriers to its use as such, an abandonment of the reserved use must be implied after the lapse of a reasonable time from the opening of the lands to settlement by the government, notwithstanding no affirmative act of vacation appears. In Mean v. Callison, 28 Okla. (sp. cit.) 739, 116 Pac. 195, in considering the effect of the reverter clause in section 5024, supra, this court said:

"'Inure' is defined by Bouvier's Law Dict. to mean: 'To take or have effect; to serve to the use, benefit or advantage of a person.' That is to say, when the easement is abandoned the title to the strip abandoned becomes ipso facto again coupled with the use."

The period of time from 1901, when these lands were opened for entry and the reservation of the section lines became effective, until 1921, when the road supervisor at-

tempted to open this quarter-mile strip in controversy, cannot be held to be a reasonable time under the facts. Intention to abandon was shown long prior to 1921 by failure to open the section line because of its utter unfitness for highway purposes.

But there is another consideration which militates against reversal of this case. It appears from the evidence that no action by the board of county commissioners preceded the attempt to open this quarter-mile strip of section line. It was simply ordered to be done by one of the county commissioners by oral direction to the road supervisor, without notice to anyone. The powers of the board of county commissioners, delegated by Comp. Stat. 1921, sec. 5793, are to be exercised by the board in regular, adjourned or special sessions. Only in this manner can the powers there delegated be legally exercised. The third class of powers there delegated is "to construct and repair bridges, and to open, lay out and vacate highways." The attempted opening of this quarter-mile strip of section line having been made without legal authority, injunction was the proper and appropriate remedy of the abutting landowner injuriously affected thereby.

The decree of the trial court perpetuating the temporary injunction should be in all things affirmed.

By the Court: It is so ordered.

Note.—See under (1) 18 C. J. p. 125; (2) 18 C. J. p. 126.