## NORTHWESTERN JOBBERS' CREDIT BUREAU v. COMMISSIONER OF INTERNAL REVENUE. *

Circuit Court of Appeals, Eighth Circuit.

January 10, 1930.

No. 8648.

\*Rehearing denied March 19, 1930.

Cleon Headley, of St. Paul, Minn. (Guy Chase and Kellogg, Morgan, Chase, Carter & Headley, all of St. Paul, Minn., on the brief), for appellant.

Barham R. Gary, Sp. Asst. to the Atty. Gen. (J. Louis Monarch, Sp. Asst. to the Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and John G. Harlan, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellee.

Before VAN VALKENBURGH and GARDNER, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. This appeal is taken from a decision by the United States Board of Tax Appeals (Northwestern Jobbers' Credit Bureau, 14 B. T. A. 362) determining the amount of tax due from the appellant for the fiscal year ending June 30, 1926. In that case it was decided that the appellant was not an exempt corporation within the provisions of section 231(7) of the Revenue Act of 1926 (26 U. S. Code § 982 [26 USCA § 982(7)]).

This appeal challenges that portion of the decision. Section 230 of the Revenue Act of 1926 (26 USCA § 981, note) imposed a corporation tax upon the net annual income of corporations, but section 231 provided for the exemption of "(7) Business leagues, chambers of commerce, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual." 26 USCA § 982(7). Appellant is a Minnesota corporation, and since its incorporation in 1906 has been engaged in business with headquarters at St. Paul. Its articles of incorporation contain the following provisions:

"The general nature of the business of this corporation shall be to operate a bureau for the conduct, management, preservation, care and disposition of the business, property and assets of persons, copartnerships and corporations which shall become financially embarrassed, insolvent or bankrupt, and in connection therewith, through its officers or other persons, attorneys or agents employed by it to act for and represent creditors at creditors' meetings or other meetings in the selection of receivers, trustees or other agents for the care or management, or sale or other disposition of the property of such insolvents, bankrupts or others who are in embarrassed circumstances and to act generally for creditors and others in the preservation, management and disposition of the property and assets of such insolvents, bankrupts or others in embarrassed circumstances, and in the adjustment, collection and securing of such claims.

"To obtain and furnish to its stockholders and such other persons as shall desire its services, information as to the financial standing and other information affecting the credit and rating of the customers and proposed customers of its stockholders and other patrons, and operate a department for this purpose.

"To act generally in the interest of the jobbing trade in the prevention and prosecution of imposition, injustice and fraud and take such lawful steps as it shall deem proper and necessary to induce the passage of such laws as will promote the general welfare and security of the trade, and to act generally for creditors in the adjustment, collection and securing of claims.

"This corporation is not organized for the purpose of any pecuniary gain for stockholders, and it shall not declare or pay any dividend upon its capital stock. All earnings not consumed in operating expenses shall be kept in a fund to be disbursed from time to time upon the order of the Board of Directors to further the purposes of the corporation. This corporation shall not sell or negotiate the sale of any stocks, bonds or securities of any kind as an investment and shall not be conducted as a financial investment for profit."

Appellant was authorized to issue 1,000 shares of its capital stock, each share being of the value of $10, and no stockholder was allowed to hold more than one share. The shares have been held by bankers, manufacturers, and jobbers. The amount of capital stock outstanding June 30, 1925, was $1,980, represented by 198 shares, and on June 30, 1926, it was $2,170, representing 217 shares. Appellant has never declared or paid any dividends to its shareholders.

In the income tax return made by appellant for the fiscal year involved, it states its gross profit from its operations as follows:

| | |
|---|---:|
| Bureau earnings | $53,999.45 |
| Postage, stationery and stenographic services | 12,133.05 |
| Interchange department earnings | 30,511.16 |
| Financial statement earnings.... | 535.79 |
| Commissions | 12,199.61 |
| Miscellaneous income and bad debts recovered | 524.97 |
| Total | $109,904.03 |

Appellant claimed deductions itemized as follows:

| | |
|---|---:|
| Litigation expense | $ 800.00 |
| Salaries and wages | 53,129.36 |
| Adjustment department expense | 2,371.34 |
| Auditing and accounting | 515.03 |
| Miscellaneous management expense | 1,587.82 |
| Postage and envelopes | 5,770.16 |
| Stationery & supplies | 5,266.87 |
| Insurance | 1,709.50 |
| Telephone and telegraph | 1,287.34 |
| Exchange | 351.74 |
| Printing and Advertising | 568.25 |
| Legal | 179.85 |
| Dues | 1,852.13 |
| Miscellaneous | 990.02 |
| Financial statement expense.... | 1,179.11 |
| Rent and light | 4,892.98 |
| Taxes | 916.50 |
| Bad debts | 18,938.72 |
| Depreciation | 1,536.31 |
| Total | $103,843.03 |

Appellant's balance sheet showed assets of $571,623.45 at the close of the fiscal year, including $465,955.29 of trust estate funds and accounts, and a surplus of $46,361.14

The general nature of the work done by appellant is the investigation and supervision of the business of retail merchants in Minnesota, North and South Dakota, and in portions of Michigan, Wisconsin, Iowa, Nebraska, and Montana for the primary benefit of jobbers and creditors. One of its activities is the furnishing to its shareholders of information about the business record of merchants. Appellant obtains from a large number of its shareholders their several trade experiences with the merchant, such as the highest credit extended to him, the amount

882

then owing by him, the amount past due from him, and his manner of paying bills, and furnishes a tabulation of such information to the inquiring shareholder and to the shareholders contributing to the information. The item of $30,511.16 in the earnings of appellant represents the compensation it received for such reports. In its supervision of the dealings between jobbers and retailers, appellant often acts as a liquidating agent for merchants who are insolvent or are in financial difficulty. A principal part of appellant's business consists in its procuring the execution of trust agreements by merchants under which appellant acts as a trustee to manage the business, collect the assets, and pay the debts of such merchants. For such services appellant charges 7½ per cent. of all amounts paid to creditors. Another activity of a similar nature consists in appellant's procuring the appointment in state or federal courts of its manager as a trustee in bankruptcy or as a receiver of the estates of merchants, and in conducting liquidation proceedings as such officer, and for this it collects the fees allowed by the courts. Appellant acts for any creditor in these proceedings, whether or not they are shareholders in appellant. The items of $53,999.45 and $12,199.61 in the gross earnings represent the income from these activities of appellant.

Other work done by appellant consists in advising with jobbers and retailers, furnishing attorneys, auditors, and agents to investigate the business of retail merchants, and for such services it charges a fee to the jobber requesting the investigation. It also undertakes to act as a manager of the business of retail merchants, with the object of protecting the creditors, and also with the object of restoring the merchant to a sound business basis, if possible. Appellant advances its money or credit for that purpose, beside paying for services of attorneys, investigators, and for other help. In the handling of the various forms of estates by appellant, it has advanced as high as $150,000 in years past. The $18,938.72 item of bad debts listed represents some advancements which had not been repaid to appellant at the time of its return. Minor activities of appellant consist in advising creditmen, aiding retail merchants in bookkeeping, giving advice as to insurance, as to the return of goods ordered, giving notification of important judicial decisions, and issuing circulars and pamphlets on subjects of trade interest. When a jobber cannot obtain a statement of the financial condition of a merchant which

is regarded as a proper one, appellant, on request of the jobber, endeavors to procure a statement by personal solicitation of the merchant, but appellant does not make it a general business to carry financial statements of retailers.

Under the terms of section 231(7) of the Revenue Act of 1926 (26 USCA § 982(7), the appellant was not entitled to exemption, if it was organized for profit. Its articles of incorporation stated that the nature of its business was, in substance, to furnish statements of financial standing, to act generally for the jobbing trade in the prevention and prosecution of fraud, to represent, by means of its officers, agents, and attorneys, creditors at meetings for the selection of trustees and receivers, to manage and dispose of the business of persons, firms, and corporations financially embarrassed, to act generally for creditors and others in the adjustment and collection of claims and in the management and disposition of assets of insolvents, bankrupts, and others in financial difficulty. The nature of the business which appellant has transacted shows the exercise of all these powers. It is quite apparent that the activities authorized are such transactions as are ordinarily carried on for the purpose of making an income. The business which appellant was authorized to do, and which it has done, includes lines of work ordinarily performed by mercantile agencies, trust companies, attorneys at law, creditmen, and collection agencies, with a view of making a profit. There is no claim that appellant intended to transact this work without making a profit, and the fact that it has been profitable is shown by the amount of a net income for the year in question of $11,129.33, and by a surplus of $46,361.14, with a capital stock of $2,170.

Appellant places some reliance upon the portions of its articles of incorporation which state that the corporation is not organized for the purpose of any pecuniary gain for stockholders, and is not to be conducted as a financial investment for profit. But another portion of the articles provides that "all earnings not consumed in operating expenses shall be kept in a fund to be disbursed from time to time by the board of directors to further the purposes of the corporation," and clearly contemplates that the corporation may make an excess of earnings over expenses, and this constitutes a profit. Rubber Company v. Goodyear, 76 U. S. (9 Wall.) 788, 804, 19 L. Ed. 566. The testimony shows that the corporation has been operated at a very substantial profit in some years and at

a less in other years. The net profits have become a surplus fund, and are used by appellant to further its activities, but appellant contends that no part of the earnings inure to the benefit of any shareholder or individual. It is true that no dividend has been paid directly in money or property, but the shareholders have received very substantial assistance by the use made of the surplus by the appellant. One of the definitions given by Webster's International dictionary of the word "inure" is "to serve to the use or benefit" (see, also, Salyer v. Jackson, 105 Okl. 212, 232 P. 412), and a profit can result to the stockholders in other ways than dividends (Houston Belt & Terminal Ry. Co. v. United States [C. C. A.] 250 F. 1). The furnishing of information to shareholders of the financial condition of retailers as shown by the trade experiences of the other members is not always self-supporting, and varies about $2,000 a year, and may run over or short. Appellant gives to its shareholders the gratuitous service, which it says is efficient and valuable, of its attorneys, auditors, and agents in investigating the affairs of retail merchants, in the territory served by it. Appellant obtains reimbursement of some of this expense, but it has suffered what it terms a tremendous loss in each year of its existence because of this service. Appellant's services in endeavoring to rehabilitate merchants who are in straitened circumstances involves advancement for attorneys, investigations, and to the estates. Appellant does not receive the full cost of this service. The expense of notification to its shareholders of important judicial decisions, of training given to creditmen, of advice to retailers on the subject of their credits and modes of bookkeeping, of distribution of literature and books, of advice to merchants as to insurance and the furnishing of pamphlets on that subject, and of correspondence and other efforts to overcome so-called trade evils incident to returning merchandise, taking unjust deductions and matters of a similar nature, is all borne by the appellant. In years when there are no net earnings, the surplus fund is available to pay for all of these services as well as to pay any deficit arising in the other lines of business done by appellant. Shareholders and other individuals receive the benefit of these services, which are valuable and reasonably necessary to the proper conduct of their business. To the extent that they are provided at the cost of appellant and not compensated for by the recipients, they are a burden and loss to the net profits accrued and accruing to appellant. The net earnings of appellant in this way inure to the benefit of its shareholders and to private individuals.

Appellant cites the case of Trinidad v. Sagrada Orden, 263 U. S. 578, 44 S. Ct. 204, 68 L. Ed. 458, but that case arose under the provisions of a statute similar to the provisions of section 231(6) of the Revenue Act of 1926 (26 USCA § 982(6). The statute involved did not make an absence of organization for profit a condition of exemption, but based the exemption on the purpose of its organization and operation. On that case it was also stipulated that no part of the net income was applied to the benefit of any stockholder or individual, and that no part of its property belonged to any of its members, even in case of dissolution. Appellant also relies upon the case of Kansas City Hay Dealers' Ass'n v. Crooks (D. C.) 28 F.(2d) 909, approved by this court in Crooks, Collector, v. Kansas City Hay Dealers' Ass'n, 37 F.(2d) 83 (December 16, 1929). In that case the association had neither capital stock nor shareholders, and operated as a mutual society for the benefit of its members. It operated no business, but employed men to look after the affairs of its members. This court reviewed the decisions in Trinidad v. Sagrada Orden, 263 U. S. 578, 44 S. Ct. 204, 68 L. Ed. 458; Waynesboro Manufacturers' Association, 1 B. T. A. 911; Unity School of Christianity, 4 B. T. A. 61, and other cases, and found that the receipt of a small net income did not prevent its exemption from taxation, if that income was only incidental to the main purposes of the association. The evidence in this case is convincing that the chief, and not the incidental, purposes of appellant are represented by its activities, for which it received its gross income of $109,904.03. In the Hay Dealers' Case it was also stipulated that no part of the surplus could inure to the benefit of any member or other individual.

After a consideration of the cases cited and a comparison of the facts involved in those cases with the facts involved in this case, the conclusion has been reached that appellant was organized for profit, that a part of its net earnings inured to the benefit of private shareholders or individuals, and that it was therefore not exempt from taxation under section 231(7) of the Revenue Act of 1926 (26 USCA § 982(7). Other questions are presented, but it is not necessary to consider them in view of what has been said. The decision of the Board of Tax Appeals will be affirmed.