Curtis WETSEL, Frank Carothers and T. J. Barton, Individually, and as the Board of County Commissioners of Greer County, State of Oklahoma, Plaintiffs In Error,

v.

Earl W. JOHNSON and Lillie E. Johnson, husband and wife, Defendants In Error.

No. 42698.

Supreme Court of Oklahoma.

April 14, 1970.

Ivester, Ivester & Ivester, Sayre, for plaintiffs in error.

Tolbert & Gillespie, Max Carder, Hobart, for defendants in error.

BERRY, Vice Chief Justice.

This appeal involves correctness of a judgment perpetually restraining and enjoining defendants, Board of County Commissioners, from trespassing upon, threatening or attempting to reopen a public road or right of way across land of defendants in error, plaintiffs in the trial court. Matters summarized hereafter are disclosed by the pleadings and evidence.

The North Fork of Red River is the boundary line between Greer and Kiowa Counties. Plaintiffs own land in Greer County, described as Section 13, Twp. 7, R. 20 WIM. Paul Lindsey and wife own land adjacent to the west in Section 14. No complete section line road between these sections had been opened since statehood. Any road opened from the south boundary of the two sections toward the north would run approximately 150–200 yards before entering Kiowa County.

When plaintiffs purchased their land in 1962 there had been no road open for approximately 30 years, and an existing fence separated the parties' lands. Shortly after plaintiffs' purchase the Lindseys removed the existing fence and constructed a fence entirely upon plaintiffs' property, which provoked the first litigation by plaintiffs and their grantor in the district court of Greer County. Judgment decreed plaintiffs could construct and maintain a fence on the old line, fixed this fence as the true boundary between the two tracts, and enjoined Lindseys from further disturbing the old fence line boundary.

Less than a month after this judgment defendants moved road machinery onto plaintiffs' property and began construction of a north-south road east of the boundary line fixed by the above judgment, and located entirely upon plaintiffs land. A large part of the road being constructed was in Kiowa County, and plaintiffs brought suit in district court of that county. Defendants then agreed to cease construction and restore plaintiffs' land to its original condition and plaintiffs dismissed their action. A road closing order was prepared, but apparently never was executed by defendants.

In September 1965 defendants formally demanded that plaintiffs remove the fence along the boundary line previously established by the district court judgment; or alternatively, if not removed by September 30th defendants would effect removal at plaintiffs' expense. By reason of threatened action plaintiffs filed this action for permanent injunction in Greer County. Concurrently a like action was filed in Kiowa County, since opening of the road would re-

quire entry upon land in Kiowa County, over which the county section line had been abandoned by nonuser. Temporary injunction against defendants attempting to open any road upon section line lying in Kiowa County was entered and still pends in the district court of that county.

The case now appealed was tried March 9, 1967. The court found the boundary line between the parties' property had been established as the old fence line by the prior decree. In November 1963, defendants had attempted to open a road upon plaintiffs' land, and as a result of prior judgment defendants had abandoned the proposed road and right of way without further attempt to open a road until September 7, 1965. The road which defendants proposed to open would be entirely upon plaintiffs' property. Approximately 30 years prior to 1963 a road and right of way existed between sections 13 and 14, although the right of way was not upon the reserved section line, but meandered across plaintiffs' property adjacent to the surveyed line. However, this road had been abandoned both by the public and defendants some 30 years prior to 1963. Defendants again abandoned attempt to open this right of way across plaintiffs' land in 1963, and this constituted a second abandonment. Defendants had never attempted to secure right of way by condemnation or eminent domain. The principal parties advocating opening new right of way upon plaintiffs' land were Lindsey and wife. A new road would serve no public use except to provide Lindseys with a private road which would be a dead end right of way. Defendants' actions were oppressive and constituted an indirect attempt to circumvent prior judicial establishment of boundary line. By reason of two successive abandonments of attempted rights of way across plaintiffs' property, and because a new road would not serve the general public, defendants should be enjoined perpetually from threatening or attempting to reopen a public road or right of way across plaintiffs' land.

■ As propositions urged on appeal defendants assert two questions must be de-

termined. First, was this section line open and used as a roadway? Second, if opened as a roadway, was the section line ever closed in compliance with statutes and constitutional requirements? To support this position a generalized argument is made much of which involves asserted insufficiency of the evidence to support this judgment. In cases of equitable cognizance this Court will examine the record and weigh the evidence, but will not disturb the trial court's judgment unless against the clear weight of the evidence or contrary to law or established principles of equity. City of Moore v. Central Oklahoma Master Conservancy District, Okl., 441 P.2d 452; Spartan Petroleum Corp. v. Curt Brown Drilling Co., Okl., 446 P.2d 808.

Admittedly the evidence showed a roadway of sorts existed from 1924 until about 1938. This road followed the old section line about 150 yards to a slough on the river, turned northwest across a gate and cattle guard and out through a field. This was on land owned by one McKinney, father of Mrs. Lindsey. One witness (Burnett) had been familiar with the land since 1924, and farmed the Johnson land from 1936–1946. In 1938 McKinney removed the gate and cattle guard and plowed the land, and by agreement between these parties Burnett fenced the land and nothing was done to reopen the road. Evidence by the county engineer of Kiowa County established any road would run only 150–200 yards north and then into Kiowa County.

The trial court determined the road which existed some 30 years prior to 1963 was not located upon a reserved section line but, because of the natural terrain, meandered across plaintiffs' property to the surveyed section line. And, further, this road and right of way was "abandoned by the public by reason of nonuser and by the County Commissioners of Greer County Okla. * * *." This finding and determination is amply sustained by the evidence.

■ Evidence also showed defendants attempted to open the road in 1963, de-

stroyed plaintiffs' fence and plowed up the land. This conduct provoked litigation culminating in defendants replacing the fence and restoring the land, in return for dismissal of plaintiffs' action. The trial court's finding this constituted a second abandonment was not necessary to disposition of the ultimate issue. Once having been abandoned this right of way could not be utilized again for road purposes unless the defendants proceeded in compliance with statutes by exercise of right of eminent domain. The finding that a second abandonment occurred was unessential and may be treated as surplusage. For this reason argument these defendants were not parties and not bound by the court's judgment fixing plaintiffs' boundary line across the reserved section line is not persuasive.

Briefly stated, defendants' argument is premised upon presumed applicability of our statutes fixing authority of county commissioners in matters relating to roads. Under 19 O.S.1961, § 339, general powers of the commissioners are defined. Under 69 O.S.1961, § 362, commissioners are authorized to open and establish public roads by exercise of eminent domain. Then, under 69 O.S.1961, § 363, the condemnation procedure which must be followed in order to " * * * locate, alter, or vacate a road * * *" is set forth. From this it is asserted a road, once open and established, can be vacated only in the manner prescribed by statute, supra. Upon this basis the conclusion stated is, since defendants never ordered this road vacated in the manner prescribed by statute, the road could not be subject to abandonment and the court erred in so holding.

Decisions in Hillsdale Company v. Zorn, 187 Okl. 38, 100 P.2d 436, and Town of Choteau v. Blankenship, 194 Okl. 401, 152 P.2d 379, are cited as authority for argument that county commissioners cannot abandon highways at will, but can accomplish this only within the methods prescribed by statute. Also see Board of Commissioners, etc. v. Young, 186 Okl. 182, 97 P.2d 6.

In Blankenship, supra, the sole issue concerned closing and abandonment of city streets. Although neither an issue nor necessary for disposition of the case, the court reviewed decisions involving abandonment of roads by county commissioners. However, the principal announced was that statutes governing vacation of streets and highways are exclusive. But, where statutes do not provide procedure for vacating streets within incorporated towns by the board of trustees, vacation may be accomplished by board of trustees adoption of ordinance or resolution. The court further said:

"* * * But that method is not exclusive. The right to a street or alley may be lost by nonuser and such affirmative unequivocal official acts of the board of trustees as to show clearly an intention to discontinue a street or alley. A street or alley may be thus abandoned. Johnston v. Town of Yukon, above; 44 C.J. 908, note 81. But we believe the better rule is that in the absence of a statute to the contrary, abandonment may not be shown by proof of nonuser alone. Affirmative evidence of an intention to abandon must be introduced (29 C.J. 534; * * *)"

The quoted language indicates the court's recognition that nonuser is a recognized element to be considered when dealing with questions involving abandonment of roads and streets.

Research and review of decisions, both from this Court and other jurisdictions, reveals the problem is enlarged by failure to differentiate between terms used in respect to action taken in a particular case. In 39 Am.Jur.2d, Highways, Streets and Bridges § 138, that text states:

"Although the term 'abandonment' is frequently used when vacation or discontinuance of a highway is obviously intended, the terms are distinguishable. 'Vacation' or 'discontinuance' is the term ordinarily employed to describe the termination of the existence of a highway by direct action of the public authorities,

as distinguished from the loss or abandonment of the public right, such as a nonuser.

"Insofar as the rights of the public are concerned, the existence of a highway may be terminated by formal action by the public authorities having power and jurisdiction for such purpose, or, according to the rule applied in most jurisdictions, by abandonment, either by unequivocal acts showing a clear intention to abandon, or by nonuser. * * *"

Also see 39 C.J.S. Highways § 113 et seq. relating to "vacation" and compare with § 130 et seq. concerning abandonment.

In Salyer, etc. v. Jackson, 105 Okl. 212, 232 P. 412, syllabus 2 states:

"Abandonment has the same effect as formal vacation, and, where the intention to abandon a reserved section line is evidenced by its physical unsuitability for road purposes and by failure of the proper authorities to open the same to public use within a reasonable length of time, an intention to abandon is established so as to cause a reverter of the reserved portions to the abutting fee owners under section 5024, supra."

There is great factual similarity between Salyer and physical facts herein, which disclose the section line never was opened as a highway, except approximately 150–200 yards north which then turned northwest across private land to avoid the slough and river. No highway was established in fact, and such road as existed was closed in 1938. Thereafter not even occasional maintenance by the commissioners was attempted until 1963. During this 25 year period the land within the reserved section line was fenced and under cultivation, without inclination or effort by the defendants to open a road, which could go nowhere because of the terrain. In State ex rel. King v. McCurdy, 171 Okl. 445, 43 P.2d 124, syllabus 2 states:

"Nonuser of portion of public highway for less than 15 years is insufficient to constitute abandonment, in absence of clear evidence of intention to abandon."

Also see Stockton v. Board of Commissioners, Payne County, Okl., 363 P.2d 504, and cases cited.

 Nonuser of the road involved existed for 25 years. The land had been under fence and cultivation. The long period of nonuser, and commissioners apparent disinterest over this period, coupled with evidence disclosing physical unsuitability of the land for road purposes, sufficiently established abandonment of the reserved section line by defendants and their predecessors in office. The trial court correctly decreed the right of way had been abandoned, and properly enjoined defendants from attempting to reopen a public road upon plaintiffs land.

Affirmed.

All Justices concur.