John W. DENTON, Jr. and Patricia M. Denton, Appellants,

v.

The BOARD OF COUNTY COMMISSIONERS OF McCLAIN COUNTY, State of Oklahoma, Appellee.

No. 78532.

Supreme Court of Oklahoma.

April 26, 1994.

---

John Mantooth, Mantooth & Haxel, Purcell and William R. Holmes, Asst. Dist. Atty., Norman, for appellants.

Gary Barger, Asst. Dist. Atty., Purcell, for appellee.

WATT, Justice:

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

The appellants, John and Patricia Denton, own a 100 acre tract of land in McClain County which was bisected by the building of a section line road. There was conflicting evidence as to whether the road construction began before or after appellants purchased their property. Appellants brought this inverse condemnation action against appellees, the McClain County Board of County Commissioners, contending that the construction efforts of the county constituted a trespass because the section line had been abandoned. Appellants also claimed various property damage resulted from the road construction. At trial, appellants requested *inter alia* that the jury be instructed regarding abandonment of the section line by the county. Appellants based their request on the fact that the section line had never been designated or used as a road and because the terrain was impassable due to the existence of at least three "canyons." The trial judge, the Honorable J. Kenneth Love, declined to give the requested abandonment instruction. The jury returned a verdict in favor of the county and appellants appealed.

A temporary panel of the Court of Appeals agreed with appellants that the trial court erred in failing to instruct the jury regarding abandonment. However, the appellate court dismissed the case on other grounds. This Court granted appellants' Petition for Writ of Certiorari on September 29, 1993. We subsequently directed the parties to file supplemental briefs addressing the significance that appellants' property was located in the Chickasha Nation prior to statehood and the applicability of *Paschall Properties, Inc. v. Board of County Comm'rs,* 733 P.2d 878 (Okla.1987), to the facts of this case.

## ISSUE

The issue to be decided is whether the trial court erred in refusing to instruct the jury regarding the county's alleged abandonment of the section line which crossed appellants' property. The section line at issue, located in the former Chickasaw Nation, was reserved by the congressional Act of April 26, 1906, ch. 1876, § 24, 34 Stat. 145. Based upon our decision in *Paschall Properties*, this section line is not subject to vacation or abandonment. Accordingly, we hold that the trial court properly refused to so instruct the jury.

## DISCUSSION

The appellants rely primarily upon *Salyer v. Jackson*, 105 Okla. 212, 232 P. 412 (1924), for the proposition that a section line will be presumed abandoned where the terrain is physically unsuitable for road purposes and the proper authorities have failed to open the same within a reasonable length of time. *See also Wetsel v. Johnson*, 468 P.2d 479 (Okla. 1970), which announced a similar standard based upon *Salyer*. These holdings serve as the basis for appellants' claim the trial court erred in failing to instruct on abandonment. We note, however, that *Salyer* concerned a section line in Caddo County and *Wetsel* dealt with a section line in Greer County. Both of those counties are located in the former Oklahoma Territory. As was the case with all counties located in the former Oklahoma Territory, the Caddo and Greer County section lines were reserved by the Organic Act, ch. 182, § 23, 26 Stat. 92 (1890). Section 23 of the Act provides in relevant part:

That there shall be reserved public highways four rods wide between each section of land in said [Oklahoma] Territory, the section lines being the center of said highways; but no deductions shall be made, where cash payments are provided for, in the amount to be paid for each quarter section of land by reason of such reservation. *But if the said highway shall be vacated by any competent authority, the title to the respective strips shall inure to the then owner of the tract of which it formed a part by the original survey.*

(emphasis added). Because § 23 of the Organic Act has no application to property located in the former Indian Territory, *City of Blackwell v. City of Newkirk*, 31 Okla. 304, 121 P. 260 (1912), *appeal dismissed* 232 U.S. 718, 34 S.Ct. 479, 58 L.Ed. 813, we hold that *Salyer* and *Wetsel* are inapplicable to the case at bar.

This Court has addressed the issue of abandonment of section line roads on many occasions. However, a distinction was made long ago between section lines reserved under the Organic Act and those reserved under some other act or agreement. In *White v. Dowell*, 49 Okla. 589, 153 P. 1140 (1915), this Court addressed the ability of county commissioners to enter an order vacating a section line roadway reservation in Ellis County. The law that established section lines in Ellis County—located in the former Oklahoma Territory—was § 23 of the Organic Act. In ruling that the section line could be vacated, this Court distinguished the case from *Mills v. Glasscock*, 26 Okla. 123, 110 P. 377 (1910). In *Mills*, this Court rejected the notion that a section line in Osage County reserved under the Osage Allotment Act[1] was subject to vacation or abandonment. The *White* Court held that the Organic Act's statement "[b]ut if the said highway shall be vacated by any competent authority ..." was an express recognition by Congress that highway reservations might be vacated by proper officials. The Osage Allotment Act considered in *Mills* contains no such provision for vacation or abandonment. *White*, 153 P. at 1141.

This Court's most recent pronouncement concerning the abandonment of section line reservations, *Paschall Properties, Inc. v. Board of County Comm'rs*, 733 P.2d 878 (Okla.1987), further clarified the distinction to be made between section lines reserved by the Organic Act and those reserved by some

---

1. The Osage Allotment Act of June 28, 1906, ch. 3572, § 10, 34 Stat. 539, 545, states:

   That public highways or roads, two rods in width, being one rod on each side of all section lines, in the Osage Indian Reservation, may be established without any compensation therefor.

other law. In *Paschall*, the plaintiff sought to permanently enjoin the board of county commissioners from maintaining a section line road which bisected Paschall's property and dead-ended into the Grand Lake of the Cherokees. Prior to lake being built, the road did not terminate. Paschall urged the court to declare the road abandoned and rule that the land had reverted to Paschall. This Court held that because the section line was reserved by the Cherokee Allotment Act[2], it could not be abandoned.

We began our analysis in *Paschall* by noting that the State of Oklahoma accepted the Cherokee Allotment Act's reservation for roadways under Okla. Const., art. 16, § 2. Section 2 provides:

> The State of Oklahoma hereby accepts all reservations and lands for public highways made under any grant, agreement, treaty or Act of Congress; Provided, this section shall not be construed to prejudice the vested rights of any tribe, allottee or other person to any such land.

Citing *Mills*, we reiterated that the constitutional acceptance of the Cherokee Allotment Act "is self-enacting and operative without additional legislation." *Paschall*, 733 P.2d at 879.

Comparing the Cherokee Allotment Act with both the Osage Allotment Act and the Organic Act, the *Paschall* Court held:

> Reading *Mills, supra*, in conjunction with *White v. Dowell*, 49 Okl. 589, 153 P. 1140 (1915), it is clear that the case law of this jurisdiction has noted that there is no provision for abandonment of Osage Indian Territory section line roads. *Mills, supra*, was distinguished from the situation found in *White, supra*, as the *White* Court stated Section 10 of the Osage Allotment Act made no provision for abandonment of these roads while under Section 23 of the Organic Act (which established the section line road being considered in *White, supra*) there was an express recognition of

the power to vacate recognized by Congress.

> The Osage Allotment Act is simply silent on the subject of vacation and abandonment. However, the Cherokee Allotment Act negates the argued ability to permanently vacate or abandon section line roads. It provides that roads may be established along *all* sections lines [sic] without any compensation being paid for them. It is also provided that the original allottees and purchasers shall take their title to these lands subject to this ability to establish roads. The Act contains no time constraints as to when these roads may be established and specifies that all subsequent purchasers are subject to the provision, having taken their title subject to it. It is therefore concluded that the trial court erred in permanently enjoining the Board of County Commissioners from opening up the questioned section line road inasmuch as the Cherokee Allotment Act, as accepted by the Oklahoma Constitution, Article 16, Section 2, allows all section lines to be opened.

*Paschall*, 733 P.2d at 879 (emphasis in original).

As is demonstrated by the foregoing authority, the initial step in analyzing an abandonment claim is to determine whether the section line at issue was reserved by the Organic Act or by some other enactment. If the section line is located in the former Oklahoma Territory and therefore reserved by the Organic Act, the case turns on whether the evidence satisfies the criteria for abandonment outlined in *White, Salyer* and *Wetsel*, and a jury deciding this issue must be so instructed. If, however, the section line is located in the former Indian Territory and thus reserved by some other enactment, the paramount issue is whether that enactment contains a provision for, or is otherwise construed to allow, abandonment. Logically, it is only after this question is answered in the

---

**2.** The Cherokee Allotment Act of July 1, 1902, ch. 1375, § 37, 32 Stat. 716, 722, provides in relevant part:

> Public highways or roads two rods in width, being one rod on each side of the section line, may be established along all section lines without any compensation being paid therefor, and *all allottees, purchasers, and others shall take the title to such lands subject to this provision....* (emphasis added).

affirmative that consideration may be given to the abandonment criteria.[3]

■ Turning to the present case, we initially note that the dispositive issue in this case was never raised by the parties or by the courts below. However, this Court has long taken judicial notice of the locations of counties within this state, *Simpson v. Woodson,* 508 P.2d 1069, 1071 (Okla.1973); *Stewart v. Martin,* 193 Okla. 686, 146 P.2d 836, 837 (1944); *Lewis v. Rasp,* 14 Okla. 69, 76 P. 142 (1904), and of the public and general acts of Congress, *Board of County Comm'rs of Marshall County v. Snellgrove,* 428 P.2d 272, 275 (Okla.1967). Accordingly, we take judicial notice of the historical location of McClain County and of the congressional act which established roadway reservations therein.

■ Prior to statehood, the area which now constitutes McClain County—where appellants' property is located—was in the Chickasaw Nation in Indian Territory. *See* Morris, Goins & McReynolds, *Historical Atlas of Oklahoma* 55–59 (Univ. of Okla. Press) (1986). The law that established section line roads in the Chickasaw Nation was the Act of April 26, 1906, ch. 1876, § 24, 34 Stat. 145, entitled "An Act To provide for the final disposition of the affairs of the Five Civilized Tribes in the Indian Territory, and for other purposes" (hereinafter referred to as the Civilized Tribes Allotment Act). Section 24 of the Act states in relevant part:

> That in the Choctaw, Chickasaw, and Seminole nations public highways or roads two rods in width, being one rod on each side of the section line, may be established on all section lines; *and all allottees, purchasers, and others shall take title to such land subject to this provision....*

(emphasis added). As was true in *Paschall* and *Mills,* Oklahoma accepted the above reservation for roadways through Okla. Const. art. 16, § 2. The acceptance is self-enacting and operative without additional legislation.

*Paschall,* 733 P.2d at 879; *Mills,* 110 P. at 378.

The language of the Organic Act relied upon in *White, Salyer* and *Wetsel*—that highway reservations might be vacated by some competent authority—is not contained in any form in the Civilized Tribes Allotment Act. This was also the case in both *Paschall,* under the Cherokee Allotment Act, and *Mills,* under the Osage Allotment Act. We find that the Civilized Tribes Allotment Act is so similar to the Cherokee Allotment Act that the holding of *Paschall* dictates the result reached here: Section lines reserved by the Civilized Tribes Allotment Act cannot be abandoned or vacated. Not only does the Civilized Tribes Allotment Act provide that roads may be established on *all* section lines, it also states that all allottees and purchasers shall take title to the these lands subject to the roadway reservation. "The Act contains no time constraints as to when these roads may be established and specifies that all subsequent purchasers are subject to the provision, having taken their title subject to it." *Paschall,* 733 P.2d at 879. Accordingly, we conclude that the trial court did not err in refusing to instruct regarding abandonment of the section line at issue "inasmuch as the [Civilized Tribes] Allotment Act, as accepted by the Oklahoma Constitution, Article 16, Section 2, allows all section lines [reserved by that Act] to be opened." *Id.*

## CONCLUSION

The section line bisecting appellants' property was reserved by the Civilized Tribes Allotment Act. Based upon our ruling in *Paschall,* which dealt with a substantially similar congressional act, this roadway reservation is not subject to vacation or abandonment. Accordingly, we hold that the trial court did not err in refusing to instruct the jury regarding abandonment.

---

**3.** In *Oldfield v. Donelson,* 565 P.2d 37 (Okla. 1977), this Court addressed various arguments concerning the construction of a section line road that was reserved by the Osage Allotment Act. Included was a discussion of the appellants' argument that the roadway reservation had been abandoned. Both parties to the present proceed-ing cite *Oldfield* as delineating the requisites for abandonment of a reserved section line. However, as this Court intimated in *Mills* and made clear in *Paschall,* section lines reserved by the Osage Allotment Act are not subject to abandonment. Accordingly, *Oldfield* has no application to the case at bar.

Certiorari previously granted. The opinion of the Court of Appeals is vacated. The judgment of the district court is affirmed.

HODGES, C.J., LAVENDER, V.C.J., and SIMMS, HARGRAVE, OPALA, ALMA WILSON and KAUGER, JJ., concur.

SUMMERS, J., concurs by reason of stare decisis.