2014 OK CIV APP 58

**Joe CORBETT, Plaintiff/Counter–Defendant/Appellee,**

v.

**Joe COFFMAN, Defendant/Counter–Claimant/Appellant.**

**No. 111,251.**

Court of Civil Appeals of Oklahoma, Division No. 1.

May 9, 2014.

Gerald C. Dennis, Dennis & Branam, Antlers, Oklahoma, for Plaintiff/Appellee.

Gary C. Crapster, Steidley & Neal, PLLC, Tulsa, Oklahoma, for Defendant/Appellant.

KENNETH L. BUETTNER, Judge.

¶ 1 Defendant/Appellant Joe Coffman appeals from a judgment directing that a road through his property must be kept open as a

public road until officially vacated by the county and enjoining Coffman from preventing Plaintiff/Appellee Joe Corbett from using the road. The record shows that although the road was occasionally gated, it remained in use and therefore had not been abandoned. The trial court's decision is not clearly against the weight of the evidence or contrary to law and we affirm.

¶ 2 In his Petition, Corbett alleged that he and Coffman owned adjacent property in McCurtain County. Corbett alleged that for ingress and egress he had used a public road which went through Coffman's property until Coffman prevented Corbett from using the road. Corbett sought to enjoin Coffman from interfering with public use of the road.

¶ 3 Coffman denied Corbett's allegations. For his counter-claim, Coffman alleged that Corbett's claim was a cloud on his title. Coffman claimed both to have obtained the land by warranty deed and by adverse possession. Coffman asserted he and his predecessors had allowed others to use the road across his property by agreement for over fifty years. He asserted his counsel had prepared an "Agreement Regarding Road Easement for Ingress and Egress" which would grant Corbett the same use of the road. Coffman denied the road on his property was public and denied that anyone had obtained an easement by prescription over the road on his property. Coffman asserted he consented to judgment granting Corbett the easement described in the agreement he prepared, but otherwise sought to have titled quieted in his favor. Corbett answered and denied the allegations in Coffman's counter-claim.

¶ 4 Bench trial was held September 25, 2012. In its Order *Nunc Pro Tunc,* the trial court found that prior to 1967, State Highway 98 was on a section line running south from Highway 70 toward the Red River, and approximately a mile before the river, Highway 98 left the section line and ran east through the southwest corner of Section 5–8S–22E until it ended at Highway 37. The court noted that on July 10, 1967, the State Highway Commission moved the junction of Highways 98 and 37 to the north and therefore transferred this 1.3 mile segment of

road to McCurtain County for maintenance or abandonment. The court and the parties referred to the disputed road as the "gravel cut-through." The court found that McCurtain County maintained it until sometime in the 1980s, when the owners placed gates at both ends, but the gravel cut-through remained on the county's road inventory and the county obtained funds for it until ODOT removed it from the inventory in 2000 because of the gates. The court found the county had never taken formal action to abandon the gravel cut-through. The court next found that Corbett had viewed the property before purchasing it and saw the south gate to the gravel cut-through was open, but that there was no evidence as to whether Corbett viewed the north gate before the purchase. The court found Coffman purchased his property in 1990 and he contended the gravel cut-through was abandoned by the county over 20 years ago.

¶ 5 The trial court noted the question of law presented was whether the gravel cut-through was a public road or had been abandoned by the county. The court found that one mile of the gravel cut-through runs along the section line, and the remaining three-tenths of a mile cuts diagonally across Coffman's property. The court addressed those two segments separately. The court noted that the gravel cut-through is in the Choctaw Nation and found that, pursuant to the Civilized Tribes Allotment Act of 1906, section line roads in the Choctaw Nation may not be vacated or abandoned. The trial court concluded therefore that the one mile segment which is on the section line remains a public road and Coffman could not deny Corbett access to that segment for ingress or egress.

¶ 6 In addressing the .3 mile portion of the gravel cut-through which leaves the section line and crosses Coffman's property in the southwest corner of Section 5, the court found that road had been treated as a public road for many years, and originated as a route to the ferry crossing the Red River. The court noted there was no evidence as to why the road diverged from the section line. The court found that when the Highway Commission moved the junction of Highways 98 and 37 in 1967, it officially abandoned the

gravel cut-through and transferred it to the county. The court found that the county added it to its inventory and maintained it and that the public traveled on it for several years after. Therefore the court concluded that the moved highway connection did not amount to an abandonment of the old road.

¶ 7 The court next noted authority that once a road has been dedicated to public use, it remains a public road until official action by the county changes that status, citing 69 O.S.2011 § 646. The court concluded that the gravel cut-through was a dedicated and maintained public road which the State properly abandoned to the county and which stayed on the county's inventory until ODOT discovered the gates and directed the county to remove it from its inventory in 2000. The court noted the statutory procedures for opening or vacating public roads not on section lines, and found those procedures were not followed here. The court concluded, therefore, that the .3 mile segment remained a public road because the county had not taken formal, statutory action to vacate the road. The court directed that the 1.3 mile gravel cut-through remained a public road and imposed a permanent injunction against Coffman impeding Corbett's use of the road. Coffman appeals.

¶ 8 The award of a permanent injunction is a matter of equitable cognizance in which we will not disturb the trial court's decision unless it is clearly against the weight of the evidence or contrary to law. *Jackson v. Williams*, 1985 OK 103, 714 P.2d 1017, 1020 (footnotes omitted). Coffman does not dispute the trial court's findings of fact.[1] Coffman also does not challenge the trial court's findings as to the one mile segment which is on the section line. He challenges only the trial court's decision that the remaining .3 mile segment of the gravel cut-through could be abandoned only by official county action.[2] Coffman contends that abandonment may be shown by conduct as well.

¶ 9 The record shows no dispute that the cut-through was previously part of the state highway system and then in 1967 was properly abandoned by the state and transferred to the county "for further maintenance or abandonment" and thereby became part of the county's road inventory and was maintained by the county until at least the 1980s; necessarily it was a public road. 69 O.S.2011 § 232; Op.Atty.Gen.2003–10. The question presented here is whether a public road may lose that status without official county action to remove the road from public use. The statutory procedure for counties to vacate public roads is set out in 69 O.S.2011 § 646. That section provides, in pertinent part (emphasis supplied):

A. *The board of county commissioners* may open, establish, reserve or condemn roads on section lines and *may vacate*, alter, widen, change or lay out *other new roads* according to the following procedure:

\* \* \*

C. *In a petition proposing that a road be vacated, the board of county commissioners shall, upon receiving the petition, attest that according to their records the road in question is within their jurisdiction and is considered to be open for use by the general public*, through grant or ownership, by easement or dedication, by adverse possession, or by open and notorious use, *regardless of the frequency of maintenance or lack thereof.* In considering the proposal to vacate the road, the board shall hear testimony provided by the petitioners and others who may testify at the hearing as to whether the road should be vacated. *Upon a decision by the board to vacate the road, the board shall issue an order to void any easement pertaining to the road, if such easement exists, and require that the road be closed in such a manner as to prevent the use of the road by the general public.* The decision of the board to vacate or not to vacate the road

1. Coffman asserts the trial court made one error of fact, but he has not identified it and he asserts it is irrelevant.

2. Because the only portion of the road in dispute is the segment which cuts through Coffman's property between the section line and Highway 37, we refer in this decision to that .3 mile segment as the "cut-through" and our analysis does not address the one mile section line segment.

shall be final. *Except as provided in Section 649 of this title, no road in use by the general public shall be closed, obstructed or vacated in any manner except as provided by this section.*

The plain language of this statute supports the trial court's decision. It clearly states that, regardless of maintenance, a public road may not be closed or vacated in any manner except as provided in that section.

¶ 10 The trial court relied on that statute as well as *Hillsdale Co. v. Zorn,* 1939 OK 553, 100 P.2d 436, 187 Okla. 38. As noted by the trial court, *Hillsdale* is factually similar to this case. In *Hillsdale,* a road had been established as part of the county road system and then was taken over by the state highway commission. Later, the state altered the road to remove a curve. The curve, which was thereafter not part of the highway, was on the defendant's property and provided ingress and egress to the plaintiffs' properties. The defendant believed the curve was abandoned or vacated as a public road and began to plow up the portion on his property. The plaintiffs sought an injunction against removing the curve. The defendant argued that the plaintiffs had other routes to their properties, that the highway commission abandoned the curve by replacing it with a new road in close proximity, and that the highway commission had adopted a resolution abandoning the curved portion of the road. The trial court denied the injunction. On appeal, the Oklahoma Supreme Court held that the state highway commission's resolution abandoning the curve was not sufficient to vacate its status as a public road. The court held that where the state had abandoned a road, it "resumes its status as a county road, and final abandonment lies wholly with the local authorities. And final abandonment is accomplished only by vacating as provided by [69 O.S.2011 § 646] ....Where the statute prescribes the method whereby a highway may be vacated and abandoned it may be discontinued only in the manner so provided." 100 P.2d at 438. We agree with the trial court that this holding plainly supports its decision.

¶ 11 Coffman counters that reversal is required by *Wetsel v. Johnson,* 1970 OK 69, 468 P.2d 479, which he argues overruled *Hillsdale.* In *Wetsel,* the plaintiffs and defendants owned property on either side of a section line.[3] There had never been a complete section line road between the two properties. After the plaintiffs purchased their property in 1962, the defendants removed the fence between the properties and built a fence on the plaintiffs' property. The plaintiffs sued and obtained a judgment fixing the boundary along the path of the previous fence. A month later, the defendants began constructing a road on the plaintiffs' property, but stopped in response to another suit by the plaintiffs. In 1965, the defendants demanded that plaintiffs remove their fence along the judicially established boundary. Plaintiffs again sought an injunction against the defendants' removal of the fence. The trial court noted the boundary had been established in the 1962 decree and yet the defendants had tried to build a road on the plaintiffs' land in 1963 but had abandoned that effort. The trial court found that 30 years prior to 1963 a road and right of way had existed but had been abandoned by the public and the defendants 30 years earlier. The trial court held that, because of the 1933 and 1963 abandonment of attempted rights of way across the plaintiffs' property, and because a new road would not serve the general public, the defendants should be enjoined from attempting to reopen a public road or right of way on the plaintiffs' property.

¶ 12 The defendants in *Wetsel* appealed the injunction, asking the Oklahoma Supreme Court to determine whether the section line was ever opened or used as a road and if so, was it ever closed in compliance with the statutes. The Oklahoma Supreme Court noted:

(T)he evidence showed a roadway of sorts existed from 1924 until about 1938. This road followed the old section line about 150 yards to a slough on the river, turned northwest across a gate and cattle guard and out through a field. This was on land owned by one McKinney, ... In 1938

---

**3.** *Wetsel* involved property in Greer County, which was not covered by one of the Indian

Allotment Acts and consequently had no prohibition on abandoning section lines.

McKinney removed the gate and cattle guard and plowed the land, and by agreement between these parties Burnett fenced the land and nothing was done to reopen the road. Evidence by the county engineer of Kiowa County established any road would run only 150–200 yards north and then into Kiowa County.

The trial court determined the road which existed some 30 years prior to 1963 was not located upon a reserved section line but, because of the natural terrain, meandered across plaintiffs' property to the surveyed section line. And, further, this road and right of way was 'abandoned by the public by reason of nonuser and by the County Commissioners of Greer County Okla. * * *.' This finding and determination is amply sustained by the evidence.

The Oklahoma Supreme Court noted that nonuser is an element to be considered in determining abandonment of roads. The court acknowledged *Hillsdale*, but did not analyze its holding. Instead, the court cited 39 Am.Jur.2d *Highways, Streets and Bridges* § 138 for the rule that a public road may be vacated by formal action of public authorities or, "according to the rule applied in most jurisdictions, by abandonment, either by unequivocal acts showing a clear intention to abandon, or by nonuser." 468 P.2d at 483. The court then quoted the second syllabus of *Salyer v. Jackson*, 1924 OK 1173, 232 P. 412, 105 Okla. 212: "(a)bandonment has the same effect as formal vacation, and where the intention to abandon a reserved section line is evidenced by its physical unsuitability for road purposes and by failure of the proper authorities to open the same to public use within a reasonable length of time, an intention to abandon is established so as to cause a reverter of the reserved portions to the abutting fee owners . . . ."

¶ 13 In *Wetsel*, the court found abandonment in facts similar to those in *Salyer*, particularly that the section line was never opened as a highway, the road that did exist was closed in 1938 and thereafter not maintained by the county, and the section line was since then fenced and cultivated with no "effort by the defendants to open a road, which could go nowhere because of the terrain." The court found that abandonment was shown by over 15 years of nonuser of the road along with clear evidence of intent to abandon and the fact that the land was unsuitable for a road. *Id.* After *Wetsel*, the Oklahoma Supreme Court again indicated that abandonment of a road easement required evidence of official action to abandon the road along with evidence of unsuitable terrain. See *Oldfield v. Donelson*, 1977 OK 104, 565 P.2d 37, 41. As in *Wetsel*, a road had never been built on the section line in *Oldfield*. That fact, along with the language in § 646 that it provides the exclusive method for vacating a road, suggests that abandonment may apply only where no road has been opened, such that the road easement is what is abandoned (by failure to build a road, at a minimum).

¶ 14 In *Wetsel*, then, an incomplete road had never been established as a public road and had been plowed under thirty years earlier with only a fence separating the parties' properties, until the defendants tried to build a road in 1963 but were stopped by court action. The facts in this case are entirely different. Here, the cut-through was a public road and was part of the state's and then the county's highway systems. Even after being removed from the county's inventory, it remained in use as a road. Indeed, Coffman indicated his willingness for Corbett to use the road, so long as he closed the gate to prevent Coffman's livestock from escaping. The photos in the record show a well-maintained gravel roadway. While the cut-through was gated at least some of the time and the county did not maintain it, there was simply no evidence of nonuser similar to that shown in *Wetsel* or *Salyer* to support a finding of abandonment.

¶ 15 We agree with Coffman that under *Wetsel*, abandonment of a road may be shown in certain cases, but the facts of this case support the trial court's reliance on *Hillsdale*. Coffman is free to seek to have the road vacated under the procedures set out in § 646. But the terms of that statute

plainly state that those procedures are the only method for vacating an established public road.

¶ 16 The trial court's findings that the gravel cut-through had not been abandoned by nonuser with clear intent to abandon, and had not been vacated pursuant to state law, are not clearly against the weight of the evidence or contrary to law. Accordingly, we AFFIRM the permanent injunction.

JOPLIN, P.J., and HETHERINGTON, V.C.J., concur.