**TEXAS MOBILE HOME ASSOCIATION, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 20205.**

United States Court of Appeals
Fifth Circuit.

Nov. 21, 1963.

Dougal C. Pope, Houston, Tex., for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, Robert B. Alexander, Jr., Attys., Dept. of Justice, David O. Walter, and Stephen B. Wolfberg, Crane C. Hauser, Chief Counsel, I. R. S., Washington, D. C., for respondent.

Before HUTCHESON and GEWIN, Circuit Judges, and HOOPER, District Judge.

HUTCHESON, Circuit Judge.

This appeal from a decision of a tax court judge involves as the determining question whether the appellant was an organization exempt from income taxation as a business league under Sec. 501 (c) (6) I.R.C.1954, 26 U.S.C.A. 501(c) (6).

We hold that appellant was so exempt and that the judgment should be, and it is here reversed and rendered.

The facts stipulated in major part, and not in anywise disputed, are set out in the margin.[1]

---

1. Appellant is a corporation organized under the laws of the State of Texas. It has no capital stock and no stockholders. The corporation charter provided that no member, officer, or director of appellant should ever receive any profit from the corporation [and there is no evidence that any of them did]. In general the pur-

**692**

Appellant, vigorously assailing the action of the tax court judge, assigns the following errors:

1. The finding of the Tax Court Judge that appellant was not exempt from taxation under the provisions of Sec. 501(c) (6) of the Internal Revenue Code of 1954 is wrong and was clearly erroneous. [Cf. Sanders v. Leach (Leech), 5 Cir., 158 F.2d 486.]

2. The finding of the Tax Court of the United States that part of the net earnings of appellant inured to the benefit of its members is clearly erroneous. [Cf. Sanders v. Leach (Leech), supra.]

3. The failure of the Tax Court of the United States to hold that any services rendered by appellant to its members were merely incidental to the primary purpose of appellant.

4. The failure of the Tax Court of the United States to find that the major purpose and activity, if not the sole purpose and activity of appellant, was to improve the living conditions of those who lived in trailer houses and who were generally thought of as "trailer trash".

Asserting that it is exempt from taxation under the provisions of the invoked statute, Sec. 501(c) (6) I.R.C.1954 and the clearly established facts, appellant urges upon us that, under the provisions of the invoked section [2] and under Sec. 1.501(c) (6)–1. of the Commissioner's Regulations,[3] appellant is clearly an exempt organization.

---

pose of the corporation as stated in its charter was to do what it could to improve the conditions in the mobile home (house trailer) industry. The charter provided that in the event the corporation was dissolved any assets of the organization should be delivered to that benevolent, charitable, or education corporation, organized not for profit and without capital stock, which the directors of the corporation at the time of such dissolution should determine to be most appropriately organized and best able to carry out further the purpose of the corporation.

The regular members of appellant were "any person or firm deriving all or any portion of their income from any of the mobile home industry".

During the years at issue, appellant did a considerable amount of work in connection with improving the deplorable conditions that existed in the mobile home (house trailer) industry in Texas. In connection with this undertaking and in order to better do this job, it held an annual mobile home show for each of the years in issue from which it made a profit. Part of this profit was used to increase the activities of the appellant and make it more effective for the purpose for which it was formed, and the tax court judge held that this caused some of appellant's net earnings to inure to the benefit of its members and thus deprived appellant of its status as an exempt business league and made it subject to income taxes.

**2.** "§ 501. Exemption from tax on corporations, certain trusts, etc.

"(a) Exemption from taxation.—An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502, 503, or 504.

\* \* \* \* \*

"(c) List of exempt organizations.— The following organizations are referred to in subsection (a): \* \* \*

"(6) Business leagues, chambers of commerce, real-estate boards, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual."

**3.** "Sec. 1.501(c) (6)—1. *Business leagues, chambers of commerce, real estate boards, and boards of trade.* A business league is an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus, its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons. An organization whose purpose is to engage in a regular business of a kind ordinarily carried on for profit, even though the business is conducted on a cooperative basis or produces only sufficient in-

Appellant is a corporation organized as of July 1, 1955, under the laws of the State of Texas, with its principal office in Dallas, Texas. The organization began operations about 1952, prior to its incorporation.

Appellant has no capital stock and no stockholders. The provisions of its corporation charter insofar as here pertinent are set out in the margin.[4]

The by-laws of appellant set out the qualifications for membership in Article III thereof.[5]

Appellant's by-laws provide for chapters consisting of five or more members, chapter officers and association officers,

---

come to be self-sustaining, is not a business league. An association engaged in furnishing information to prospective investors; to enable them to make sound investments, is not a business league, since its activities do not further any common business interest, even though all of its income is devoted to the purpose stated. A stock or commodity exchange is not a business league, a chamber of commerce, or a board of trade within the meaning of section 501(d) (6) and is not exempt from tax. Organizations otherwise exempt from tax under this section are taxable upon their unrelated business taxable income. See sections 511 to 515, inclusive, and the regulations thereunder."

4. These are as follows:

"That we, the subscribers hereto, each a resident and citizen of the County of Nueces and State of Texas, acting under the laws of the State of Texas, do hereby associate ourselves together for the purpose of forming a corporation without capital stock and which shall be formed exclusively for the purposes hereinafter set forth, no member, officer or director of the corporation ever being privileged or authorized to receive any profit, and no profit ever to be received by any of them; and to that end, we, the subscribers hereto, do hereby adopt and subscribe to this charter of the corporation.

*     *     *     *     *

"The purpose for which the corporation is formed is the support of the following undertakings as authorized by Subd. 53 of Article 1302 of the Texas Revised Civil Statutes of 1925, to-wit: to promote the general welfare of the respective members; to sponsor comprehensive public education programs; to support a legislative program designed to protect the general public and to mutually benefit all members; to sponsor a program of study and research designed to correct unfavorable conditions and encourage the constant improvement of all phases of the association's activities; and to protect the membership against unfair trade practices.

*     *     *     *     *

"The number of directors shall be determined from time to time by by-laws of the corporation, never being less than three nor more than thirty-five. * * *

*     *     *     *     *

"There shall be no capital stock. No member, director, or officer of the corporation shall receive any profit. All of the assets of the corporation at all times shall be devoted exclusively to the benevolent, charitable and educational purpose defined in Article Two hereof, and in the event of the dissolution of the corporation, shall then be delivered to that benevolent, charitable or educational corporation, organized not for profit and without capital stock, which the directors of this corporation at the time of such dissolution shall determine to be most appropriately organized and best able to carry out further the purpose of this corporation as defined in Article Two hereof. Thus all operations of this corporation and all its assets and at all times shall be and hereby are dedicated exclusively to and shall be devoted exclusively to the purpose defined herein. There are no assets or property owned by the corporation at this time.

5. Article III—

"Section 1. Kinds—There shall be four kinds of membership, namely Regular, Associate, Honorary, and Members-at-Large.

"Section 2. Regular Membership— Any reputable and recognized person or firm deriving all or any portion of their income from any phase of the mobile home industry shall be eligible for Regular Membership, subject to approval of the Membership Committee.

"Section 3. Associate Membership— Any resident of a mobile home or employee of a business holding regular membership in this Association shall be eligible for Associate Membership.

"Section 4. Honorary Membership— Any person or firm rendering unusual or praiseworthy service to the mobile home industry or making an outstanding contribution to the success or general wel-

an association board of directors and the method of their selection, and their duties. The by-laws also provide for annual and other meetings of the association with delegates from the various chapters, quarterly and special meetings of the board of directors, method of amending the by-laws, and that annual dues for members and associate members should be in amounts to be set at the annual meetings.

During 1955 appellant had seven to ten chapters and during 1956 and 1957 it had twelve and fifteen chapters, respectively. Its membership consisted of owners and operators of mobile home parks, mobile home dealers, mobile home manufacturers, mobile home equipment manufacturers, mobile home equipment sales organizations, mobile home service organizations such as suppliers of manufactured gas, companies engaged in insurance, finance, and repair of mobile homes, firms engaged in towing and parking mobile homes, and real estate dealers in mobile home parks. There was a yearly increase from 1955 through 1957 in the number of appellant's regular and its associate members.

The purposes for which appellant corporation was formed as set out in its by-laws were the same as set forth in its charter.

Consonant with its stated purposes appellant conducted business meetings, engaged in the promotion of State legislation favorable to its members concerning the maximum length of mobile homes and towing vehicles permitted on Texas highways, participated in certain civic undertakings, together with the Red Cross and Civil Defense authorities, engaged in statewide screenings of motion pictures designed to show the attractions of mobile homes, and engaged in the dissemination of information of interest to its members and to others who expressed interest in planning mobile home parks, some without charge and some at a nominal charge as compared to its cost.

Appellant conducted annual mobile home shows during the years 1955, 1956 and 1957, at the time and in conjunction with its annual convention. The purposes of the annual shows were to encourage the sale of mobile homes and accessories thereto, to promote interest in mobile homes among the people of Texas, to assist manufacturers and suppliers in presenting their products to prospective customers in a central location, and to provide funds to employ an executive director and an office secretary to engage in the work of the organization.

Appellant rented the buildings in which the annual shows were held and in turn rented space therein to various exhibitors. The exhibitors included manufacturers of mobile homes, suppliers of accessories and services, finance companies, and insurance agencies. A majority of the exhibitors at each of the annual shows in the years here in issue were not members of appellant. The same rental rate was charged to members as to non-members. The gross receipts from the annual shows, in addition to rentals of space to exhibitors, included sales of tickets to the annual banquets, sales of advertising space in the show programs, and admission fees charged the general public. The first two days of these shows were reserved for dealers and during the remaining two days the shows were open to the public. During the annual mobile home shows appellant arranged for the conduct of certain trade classes on the proper servicing and installation of equipment which is used in mobile homes. Engineers from various companies which manufacture refrigerators, stoves, butane and electrical equipment presented information of interest to those involved in the mobile home industry. The show programs also con-

fare of the Texas Mobile Home Association may be elected to Honorary Membership by a majority vote of the general membership.

"Section 5. Members-at-Large shall be those whose business location is not within the area of an established chapter.

tained the convention programs. The convention programs included park operators' clinics, dealers' sales training programs, and reports on matters of interest to the mobile home industry such as State legislation, local property laws, and expansion of Government operated parks, as well as provisions for business meetings of the delegates.

In 1957 appellant's members received free individual advertising on the program published for the show. In this year appellant's board of directors authorized the printing of 20,000 copies of the program allowing uniform advertisements for each member to be included therein without cost to the member with the inclusion of as much additional paid advertising as possible.

The annual shows resulted in net profits of $844.30 for appellant's fiscal year ended October 31, 1955, $11,618.44 for its fiscal year ended October 31, 1956, and $3,230.66 for its fiscal year ended October 31, 1957. These net profits were transferred to appellant's general operating fund and were used by it in payment of its normal operating expenses.

In holding that appellant was not a tax exempt business league, the purpose and effect of the Congressional act was entirely overlooked, indeed disregarded. In drawing the contrast between the approach of the writer of the tax court opinion in this case with that of the Supreme Court in Trinidad v. Sagrada Orden, 263 U.S. 578, at pages 581–582, 44 S.Ct. 204, 205, 68 L.Ed. 458, I can do so most effectively by quoting from that case:

"* * * In effect, the contention puts aside as immaterial the fact that the income from the properties is devoted exclusively to religious, charitable and educational purposes, and also the fact that the limited trading, if it can be called such, is purely incidental to the pursuit of those purposes, and is in no sense a distinct or external venture.

"Whether the contention is well taken turns primarily on the meaning of the excepting clause, before quoted from the taxing act. Two matters apparent on the face of the clause go far towards settling its meaning. First, it recognizes that a corporation may be organized and operated exclusively for religious, charitable, scientific or educational purposes, and yet have a net income. Next, it says nothing about the source of the income, but makes the destination the ultimate test of exemption.

"Evidently the exemption is made in recognition of the benefit which the public derives from corporate activities of the class named, and is intended to aid them when not conducted for private gain. Such activities cannot be carried on without money; and it is common knowledge that they are largely carried on with income received from properties dedicated to their pursuit. This is particularly true of many charitable, scientific and educational corporations and is measurably true of some religious corporations. *Making such properties productive to the end that the income may be thus used does not alter or enlarge the purposes for which the corporation is created and conducted.* This is recognized in University v. People, 99 U.S. 309, 324, [25 L.Ed. 387], where this court said: *'The purpose of a college or university is to give youth an education. The money which comes from the sale or rent of land dedicated to that object aids this purpose. Land so held and leased is held for school purposes, in the fullest and clearest sense.'* To the same effect is Methodist Episcopal Church South vs. Hinton, 92 Tenn. 188, 200, 21 S.W. 321 [19 L.R.A. 289]. And in our opinion the excepting clause, taken according to its letter and spirit, proceeds on this view of the subject.

"The plaintiff, being a corporation sole, has no stockholders. It is the

legal representative of an ancient religious order the members of which have, among other vows, that of poverty. According to the Philippine law under which it is created, all of its properties are held for religious, charitable and educational purposes; and according to the facts stipulated it devotes and applies to those purposes all of the income—rent, dividends and interest—from such properties. In using the properties to produce the income, it therefore is adhering to and advancing those purposes, and not stepping aside from them or engaging in a business pursuit.

"As respects the transactions in wine, chocolate and other articles, we think they do not amount to engaging in trade in any proper sense of the term. It is not claimed that there is any selling to the public or in competition with others. The articles are merely bought and supplied for use within the plaintiff's own organization and agencies—some of them for strictly religious use, and the others for uses which are purely incidental to the work which the plaintiff is carrying on. That the transactions yield some profit is in the circumstances a negligible factor. Financial gain is not the end to which they are directed." (Emphasis added.)

Many cases from this circuit and other circuits may be cited to the same effect.[6]

The decision in this case is a dry as dust decision without flesh and blood in it but only dry bones. Content to follow the Trinidad case, supra, and others in this field which, recognizing, give effect to, the purpose and intent of the Congressional enactment, we, without further discussion, reject the approach of the tax court decision and judgment, rendered as it was with a gaze so foreshortened by the view of the publican and the taxgatherer that it tithed mint, anise and cumin, overlooking the weighter things of the applicable law and denied the appellant justice in the cause. The judgment is, therefore, reversed and here rendered for the taxpayer.

---

6. Koon Kreek Klub v. Thomas, 5 Cir., 108 F.2d 616 and the many cases cited in it; Campbell v. Big Spring Cowboy Reunion, 5 Cir., 210 F.2d 143.