INDEPENDENT INSURANCE AGENTS OF HUNTSVILLE, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Independent Ins. Agents of Huntsville, Inc. v. Commissioner
Docket No. 25616-89
United States Tax Court
T.C. Memo 1992-163; 1992 Tax Ct. Memo LEXIS 175; 63 T.C.M. (CCH) 2468; March 23, 1992, Filed *175 Decision will be entered for respondent. John R. Wynn, for petitioner. Linda J. Wise, for respondent. FAY
FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in income tax for the years in issue as follows: Year Ended
Deficiency
March 31, 1985
$ 21,655.11
March 31, 1986
25,642.04
March 31, 1987
32,764.89
The issues presented for our decision are as follows: (1) Whether income derived by petitioner from its public insurance activity is taxable as unrelated business taxable income, and, if we conclude that such income is taxable as unrelated business taxable income, (2) whether petitioner should be allowed to deduct expenses in excess of those allowed in the notice of deficiency. We conclude that the income derived from petitioner's public insurance activity is taxable as unrelated business taxable income and that petitioner is not entitled to deductions in excess of those allowed in the notice of deficiency. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner's principal place of business *176 was in Huntsville, Alabama, at the time of the filing of the petition. Petitioner is a corporation organized under the Alabama Non-Profit Corporation Act. Petitioner's membership is open to insurance agencies, licensed brokers, and licensed agents who have their principal office in Madison County, Alabama, and who represent at least two fire and/or casualty companies on a commission basis. Currently, petitioner has approximately 18 member agencies. [1]
As provided for in petitioner's articles of incorporation, the purposes for petitioner's incorporation and existence are, among others, to (1) improve conditions in the insurance business, (2) advance the public interest through high insurance standards and practices, and (3) secure and maintain good relations between the insurance industry and the insuring public. In April 1974, petitioner applied for exempt status pursuant to section 501(c)(6), [2] and, on its Exemption Application *177 (Form 1024), petitioner stated that the purposes for its formation and existence include, among others, overseeing the writing of insurance for public authorities to insure that such authorities are receiving the best insurance protection and services available. Petitioner's bylaws authorize the creation of the Association Account Assignment and Review Committee (Committee). In addition, the bylaws indicate that the duties of this Committee include supervision over all lines of insurance (except life, accident, and health insurance), the premiums for which are paid in whole or in part by certain public authorities. [3]
*178 However, the primary function of the Committee is to assign public accounts to qualified members. To receive an assignment of a public account from the Committee, a member agency must (1) have been licensed to write insurance for a minimum of 3 years, (2) be a member in good standing with the corporation, (3) be active in the corporation by having agency representation at not less than six meetings of the members, and (4) be able to properly service the account and have adequate access to markets. Approximately half of the member agencies of petitioner handle these public accounts. The qualified member assigned a public account in many instances first determines the insurance specifications of the public authority. Then the assigned member solicits the handful of insurance companies it represents for a suitable policy. In the typical case, the assigned member does not submit the specifications to other member agencies (or nonmember agencies). After evaluating the different insurance policies received from the insurance companies solicited, the assigned member presents a policy (or several policies) to the public authority. If the public authority agrees to purchase insurance *179 through the assigned member, the assigned member and petitioner share the commission. In the circumstance where certain coverage could not be provided through the insurance companies it represents, the assigned member might consult other members and may ultimately recommend a policy marketed by another member. [4] In that situation, some arrangement to split the assigned member's share of the commission with the other member would probably be made. Petitioner's share of the total commissions received from each public account approximates 40 to 60 percent. Petitioner's share of these commissions represents practically all of petitioner's operating income. Petitioner's operating income is used, in part, to make donations to charitable organizations, to provide for institutional advertising and educational programs, to reimburse members for conventions, seminars, and licensing school, and to pay dues to the State and the national *180 organization on behalf of its members. As already mentioned, petitioner applied for exempt status pursuant to section 501(c)(6) in April 1974. In response to petitioner's Exemption Application, the Exempt Organizations Branch of the Internal Revenue Service (Exempt Organizations Branch) requested additional information, including a breakdown of time spent on petitioner's corporate activities. In response to this request, petitioner submitted a detailed breakdown of activities which indicated that 33.8 percent of time spent was related to its public insurance activity. [5] By letter dated January 6, 1975, the Exempt Organizations Branch advised petitioner that it had been determined to be exempt from Federal income tax pursuant to section 501(c)(6). However, the Exempt Organizations Branch also advised petitioner that no determination was made concerning whether any present or proposed activities are unrelated trade or businesses as defined in section 513. *181 OPINION Section 501(a) and (c)(6) provides for an exemption from income tax for certain business leagues which promote their members' common business interest without engaging in regular business activities ordinarily carried on for profit. However, section 511 imposes a tax on the income generated from an unrelated trade or business of such organizations. Section 513 defines an "unrelated trade or business" as "any trade or business the conduct of which is not substantially related * * * to the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501". Thus, while petitioner is exempt from taxation under section 501(c)(6) as a business league, the commissions it earns from its public insurance activity may be subject to tax if those commissions are unrelated business taxable income (UBTI). The regulations set forth the following three elements necessary to find an unrelated trade or business: (1) The activity is a trade or business, (2) the trade or business is regularly carried on by the organization, and (3) the conduct of the trade or business is not substantially *182 related (other than through the need for or use of the funds produced) to the organization's tax-exempt purpose. Sec. 1.513-1(a), Income Tax Regs. In this case, petitioner does not dispute that its public insurance activity constitutes a trade or business which is regularly carried on by petitioner. Thus, the remaining question is whether petitioner's public insurance activity is "substantially related" to petitioner's tax exempt purposes. Petitioner has the burden of proof. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). The regulations provide that, for such a substantial relationship to exist, the business activities must contribute importantly to the accomplishment of the organization's exempt purposes. Sec. 1.513-1(d)(2), Income Tax Regs. Whether the activities contribute importantly to the accomplishment of the organization's exempt purposes depends in each case upon the facts and circumstances involved. Sec. 1.513-1(d)(2), Income Tax Regs.
Petitioner cites Independent Insurance Agents of Northern Nevada, Inc. v. United States, 44 AFTR 2d 79-5880, 79-2 USTC par. 9601 (D. Nev. 1979), as persuasive authority regarding *183 this case. In Independent Insurance Agents of Northern Nevada, the District Court held that the commission income received from a section 501(c)(6) organization's public insurance activity was related to its exempt purpose. In so holding, the District Court found that placing the insurance on the open market for bids should result in the lowest cost to the public authority. Here, by contrast, the insurance needs of the public authorities were not placed on the open market for bids. Rather, the Committee merely assigned public accounts to a member agency, and, in obtaining insurance for the public authority, the assigned member agency typically contacted only the handful of insurance companies it represented. Furthermore, as discussed in more detail below, petitioner has failed to prove that the public authorities receiving insurance through petitioner were receiving the best insurance at the lowest overall cost. Petitioner also argues that its public insurance activity must be substantially related to its stated purposes since "overseeing the writing of insurance for public authorities" is listed as one of the purposes on its exemption application. [6] Upon review *184 of the manner in which petitioner's public insurance activity was conducted, however, we disagree. See United States v. American College of Physicians, 475 U.S. 834, 849 (1986); Texas Apartment Association v. United States, 869 F.2d 884, 887 (5th Cir. 1989). In its exemption application, petitioner did state that it was formed to "oversee the writing of insurance for public authorities to insure that such authorities are receiving the best insurance protection and service available." However, other than the statements by petitioner's witnesses that public accounts were "monitored", "analyzed", and "reviewed" [7] by the Committee, *185 there is no indication of regular independent oversight by the Committee over the servicing of public accounts. [8] In this regard, we do not find sufficient evidence indicating that, upon review, the Committee informs the assigned member agency that, based on the market, the best insurance at the lowest cost had not been provided or that a certain coverage should be recommended (although the Committee's right to make such recommendations is expressly reserved in petitioner's bylaws). [9]
*186 Petitioner did present testimony concerning certain instances where the assigned member agency could not, through the insurance companies it represented, write the particular policy needed by the public authority. In those instances the assigned member agency would contact one or more of the other member agencies in an effort to search for a suitable policy. Petitioner, however, presented no evidence as to the frequency in which these searches occurred or whether any such searches occurred during the years in issue. Further, petitioner failed to establish that a nonmember independent agent in the same circumstances would not be capable of making a similar search among other independent agents. In addition, petitioner argues its public insurance activity is substantially related to its stated purposes of advancing the public interest, [10] improving the conditions in the insurance industry, and maintaining good relations between the insurance industry and the issuing public. In this regard, petitioner contends that its public insurance activity provides public authorities with the best insurance for the lowest cost, eliminates political influence from the public insurance procurement *187 process, provides insurance for difficult to insure risks, and coordinates coverage so as to reduce policy gaps and conflicts. We, however, find that petitioner has failed to carry its burden of proof regarding these issues. Accordingly, we cannot conclude petitioner's public insurance activity is substantially related to any of its stated purposes. With regard to providing the best insurance for the lowest cost, for the most part, the administrators of the public authorities who served as witnesses for petitioner were not qualified to evaluate whether they were obtaining the best insurance for the lowest cost. Except for Mr. Fitzpatrick, the City of Huntsville risk manager, these witnesses had no special expertise in making such an evaluation. *188 While Mr. Fitzpatrick is qualified to make such an evaluation, he did not do so in this case. He did not perform any significant comparison shopping, nor did he review the assigned member agency's work. Thus, none of these witnesses could reasonably determine whether purchasing insurance through petitioner provides the best insurance with the lowest overall cost. Furthermore, contrary to petitioner's assertions, the mere fact that, in a few instances, a public authority pays lower premiums in a subsequent year does not establish that petitioner provides the best insurance for the lowest cost, especially when the prior years were handled through petitioner as well. With regard to removing political influence, not one of petitioner's witnesses testified to having personal knowledge of how the system worked prior to petitioner's existence or whether the prior system was even subject to political influence. Furthermore, none of petitioner's witnesses could give a detailed explanation of how petitioner accomplished this. Thus, we cannot conclude petitioner reduced or eliminated political influence from the public insurance procurement process. With regard to providing insurance *189 for difficult to insure risks, the record reflects that petitioner itself is not an insurance company but, rather, an organization whose membership is composed of numerous independent insurance agencies. Petitioner has failed to prove that the same insurance was not available through other nonmember independent agents. Petitioner has also failed to prove that the same insurance was not available through companies that market their insurance solely through their own employees. Thus, we cannot conclude petitioner provided coverage for risks otherwise not available to the public authorities. With regard to coordinating coverages so as to reduce policy gaps and conflicts, petitioner failed to prove that its public insurance activities reduced policy gaps and conflicts any more than if a public authority obtained insurance through a single nonmember independent agent. [11]
Finally, petitioner argues that, in the event *190 we find the commissions received constitute UBTI, we should allow petitioner to deduct certain expenses in addition to those allowed in the notice of deficiency. We disagree. First, petitioner is not entitled to deduct charitable contributions in excess of 10 percent of UBTI (before any deduction for charitable contributions). Sec. 512(b)(10). Second, gross income from an unrelated trade or business may be reduced by deductions (otherwise allowable) which are directly connected with such trade or business. Sec. 512(a). We find that petitioner has failed to establish that these expenses are directly connected to petitioner's public insurance activity. Thus, we do not reach the questions concerning whether these expenses are reasonable and substantiated. Decision will be entered for respondent. Footnotes
1. All independent agencies in the City of Huntsville are members of petitioner.↩
2. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
3. These public authorities include City of Huntsville, Madison County, Huntsville-Madison County Library, Von Braun Civic Center, Burritt Museum, Huntsville City schools, Transportation Department of the City of Huntsville, Senior Center, Airport Authority, and Huntsville utilities.↩
4. The assigned member may also solicit insurance companies not represented by any member.↩
5. For the years in issue, petitioner submitted a detailed breakdown of activities which indicated that approximately 29 percent of time spent was related to its public insurance activity.↩
6. In addition to her "not substantially related" argument, respondent argues that overseeing the writing of insurance for public authorities is not a valid exempt purpose for a sec. 501(c)(6) organization. Since we find that petitioner's public insurance activity is not substantially related to any of its stated purposes, we do not reach this issue.↩
7. The testimony indicates that these "reviews" occurred during quarterly meetings. However, the suggestion for quarterly meetings appears to have been first raised in early 1986. (See Joint Exhibit 20T.) Further, there is nothing in the record establishing that this suggestion was actually implemented during any of the years in issue. ↩
8. We recognize petitioner's bylaws call for review of each public account every 3 years and petitioner has stated that 29 percent of its time during the years in issue involved public insurance activities. However, petitioner called three witnesses all who have served on the Committee for numerous years. Based on the evidence, including their testimony at trial, we conclude that, during the years in issue, the Committee did not perform regular independent oversight activities. ↩
9. The bylaws also provide that each year the president or a designated representative shall contact each public authority assigned to a member agency in an attempt to obtain feedback on the handling of the account. The bylaws further provide that the president shall prepare a summary of the information obtained and submit it to the Committee. None of petitioner's witnesses even mentioned such activities.↩
10. Respondent also argues that advancing the public interest is not a valid exempt purpose for a sec. 501(c)(6) organization. Since we find that petitioner's public insurance activity is not substantially related to any of its stated purposes, we do not reach this issue.↩
11. We have reviewed petitioner's remaining arguments regarding this issue, but find them meritless.↩