**MUSEUM OF FLIGHT FOUNDATION,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**No. C98–0029C.**

United States District Court,
W.D. Washington,
at Seattle.

Feb. 10, 1999.

Clark Reed Nichols, Perkins Coie, Seattle, WA, for plaintiff.

Diane E. Tebelius, U.S. Attorney's Office, Seattle, WA, Deirdre A. Donnelly, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

## ORDER

COUGHENOUR, Chief Judge.

This a tax case involving the Museum of Flight's lease of the first 747 back to Boeing to serve as a test-bed for new high-thrust engines in the 777 project. The parties have stipulated to the factual record. The only issue in this case is whether the ordinarily tax-exempt Museum is liable for taxes on the lease income as "unrelated business taxable income" under 511(a)(1) of the Internal Revenue Code. The parties presented oral arguments on this point, and the Court ruled from the bench that the lease income was not taxable because the lease did not constitute a regular business activity, and because it was substantially related to the Museum's tax-exempt purposes. This Order supplements and affirms the Court's oral ruling.

## FACTS

In February 1969, the maiden flight of the 747 "City of Everett" inaugurated the age of the jumbo jet. Though it never entered commercial service, Boeing used the first 747 for research and development for nearly twenty years. Boeing retired the plane in 1988, stripped it of its engines, and parked it at Paine Field in Everett. Shortly thereafter, the Museum of Flight began efforts to acquire this hugely significant aviation artifact. In 1990, Boeing donated the jet to the Museum "as-is, where-is." The Museum began work to restore the aircraft for permanent display at the Paine Field location.

Shortly after donating the aircraft, Boeing identified the need for a test-bed airframe for new high-thrust engines to be used in its forthcoming 777. Boeing possessed no acceptable aircraft, and could not obtain one from a commercial leasing company because the necessary modifications for the test program would render the craft unairworthy upon its return. So Boeing sought to lease the City of Everett back from the Museum, which would not be concerned about the craft's subsequent airworthiness.

The Museum agreed to lease the aircraft back to Boeing. Boeing paid the Museum $200,000 in equal installments in 1991 and 1992 under the lease. Boeing insured the aircraft, repainted it, performed the necessary modifications, and used it for testing through the end of the lease and a short extension until June, 1995. Boeing returned the aircraft to the Museum at the Museum's main visitor facility at Boeing Field, instead of Paine Field. The aircraft was without engines, but with much of the

flight test equipment and instrumentation at the end of the lease. The Museum is currently working to place the aircraft in condition for permanent public display, and intends to use the 777 engine-test equipment as part of the exhibit. The Museum has never before or since leased aircraft for testing or any other purpose.

## DISCUSSION

■■■ The Government claims that the income to the Museum from the lease is "unrelated business taxable income" under 26 U.S.C. § 511(a). Income to an otherwise tax-exempt organization is taxable under this provision if (1) it is derived from a trade or business; (2) the trade or business is regularly carried on; and (3) the trade or business is not substantially related to the tax-exempt purposes of the organization. *See United States v. American Bar Endowment,* 477 U.S. 105, 110, 106 S.Ct. 2426, 91 L.Ed.2d 89 (1986). The purpose of the exclusion is to prevent tax-exempt organizations from unfairly competing with taxable businesses. *See id.* at 117, 106 S.Ct. 2426; *see also American College of Physicians,* 475 U.S. 834, 838, 106 S.Ct. 1591, 89 L.Ed.2d 841 (1986). The Museum does not dispute that the lease constituted "trade or business" within the meaning of the code, but argues that the business was not regularly carried on and was substantially related to the Museum's tax-exempt purposes.

■■■ The Court is not persuaded that the lease in this case constituted business that was "regularly carried on." To the contrary, it appears to be a one-time, completely fortuitous lease of unique equipment that was unavailable on the open market. The Government cites a single 1962 Sixth Circuit case in support of its contention that one lease of extended duration can constitute "regularly carried on" business. *Cooper Tire & Rubber Co. Employees' Retirement Fund v. Commissioner of Internal Revenue,* 306 F.2d 20 (6th Cir.1962), upheld taxation of income to a charitable trust from a ten-year lease of twenty tire-manufacturing machines to a tire-maker. Several important facts distinguish *Cooper* from this case, however. Most obviously, the lease in this case was of less than half the duration of the *Cooper* lease and concerned only a single piece of property, albeit a very big one. But the differences between this case and *Cooper* are not merely of degree.

The lease in *Cooper* bore a much greater similarity to an ordinary commercial transaction than the one in this case. In *Cooper,* the trust acquired the tire-manufacturing equipment for the specific purpose of leasing it to a commercial concern. Here, the Museum did not acquire the property for commercial purposes, and already owned it when it was approached by Boeing about leasing it back. In *Cooper,* the trust had to purchase the machinery, borrow money, execute a mortgage, collect rentals, and make payments on the bank note. The deal as a whole was "more like one to finance the entire purchase price of machinery needed by the tire company than a conventional investment for the trust." *Id.* at 21. Here, the lease required minimal involvement by the Museum: the aircraft was already parked at Boeing's Paine Field facility in Everett, and the Museum needed do little more to complete the transaction than sign the papers and collect two annual payments. The transaction bore at most a superficial resemblance to an ordinary aircraft lease.

*Cooper* also appears to have involved an element of improper purpose that is not present in this case. In *Cooper* a statute prohibited the trust from making loans to the tire company without adequate security. *See id.* There is no allegation that the lease in this case was made to sidestep any similar restrictions.

■■■ Even if the lease had constituted regular business, it was sufficiently related to the Museum's tax-exempt purposes. To be substantially related, a tax-exempt organization's business activities "must have a causal relationship to the achievement of

exempt purposes, other than through the production of income, and such causal relationship must be a substantial one." *Independent Ins. Agents of Huntsville, Inc. v. Commissioner of Internal Revenue,* 998 F.2d 898, 901 (11th Cir.1993). "For such a substantial relationship to exist, the business activities must contribute importantly to the accomplishment of the organization's exempt purposes." *Id.* Among the reasons for which the Museum was incorporated are "[t]o foster research and writing about the history of aviation and aerospace activities;" and "[t]o acquire, restore, preserve and donate for public display airplanes and other aerospace objects of present or historical value."

It is clear from the record that the historic value of the aircraft is derived not just from its status as the first 747, but also from its extensive history as a test aircraft. The 777 project added a fascinating final chapter to that history, and the return of the aircraft with test equipment intact enhanced the display value of the aircraft as a historical and educational artifact. The production of a segment on the tests in a documentary film about the 777 project also furthered the Museum's goal of "fostering research and writing about the history of aviation and aerospace activities."

Regardless of the 747's history as a test aircraft, the lease significantly advanced the Museum's mission to restore and display historic aircraft. As originally donated, the aircraft was engineless and immobile at Paine Field in Everett. After the lease, the freshly painted aircraft was delivered to the Museum's main facility at Boeing Field. There can be no question that adding the plane to the Museum's collection at the main location is immeasurably more conducive to public display than maintaining it at a separate facility many miles away. And, though counsel was unable to produce an exact figure at trial, the Court is certain that a new paint-job for a 747 is not cheap. Though the lease undoubtedly placed the aircraft at some risk, this risk was not so great, nor the benefits of the arrangement so slight, as to render the lease on balance inconsistent with the Museum's exempt purposes.

Finally, and most importantly, the underlying policy of the unrelated business income exception is simply not implicated in any significant way in this case. This is not a case like *Cooper,* where an arrangement competed directly with financing sources that are regularly offered for profit on the open market. The Government has stipulated that similar aircraft were unavailable from commercial lessors because the testing would render the aircraft unfit for subsequent commercial use. Even if the Court were to permit the Government to contradict this stipulation now, as it attempted to do at argument with a magazine article purporting to describe a commercial lease under similar circumstances, the Court is not persuaded that the Museum lease displaced a deal that otherwise would have occurred in the for-profit market. It is apparent to the Court that Boeing's test engineers were divided on whether flight-testing was needed at all, and it is not at all certain that Boeing would have proceeded with the flight-test program had the aircraft in question not been available at such a convenient location and at such a favorable cost. The Court is in any case satisfied that failing to tax this income will not result in a rush of air and space museums clamoring to lease their historic planes.

## CONCLUSION AND ORDER

For the foregoing reasons, the Court finds that income from the lease was not "unrelated business taxable income" under 26 U.S.C. § 511(a). Accordingly, the Court ORDERS judgment for the Plaintiff, Museum of Flight Foundation, in the amount of $56,865.42, with leave to petition for interest, costs, and attorneys' fees to the extent permitted by 26 U.S.C. § 7430 or other law.